621 F.2d 319
 In the Matter of the Application of William Sheffield for a
Writ of Habeas Corpus on behalf of Nathan Jacques
WARREN, Sr., real party in interest,
Plaintiff-Appellant,
v.
Harold J. CARDWELL, as Warden of the Arizona State Prison,
Defendant-Appellee,
and
United States of America and Maricopa County,
Defendants-Intervenors-Appellees.
 No. 78-2228.
 United States Court of Appeals,
Ninth Circuit.
 March 20, 1980.
 
 William Sheffield, Sheffield, Charton, Fishman & Agajanian, Santa Ana, Cal., for plaintiff-appellant.
 George B. Nielsen, Jr., Asst. U. S. Atty., Phoenix, Ariz., argued, for defendant-appellee; Philip J. MacDonnell, Phoenix, Ariz., on brief.
 Appeal from the United States District Court for the District of Arizona.
 Before CHOY and WALLACE, Circuit Judges, and GRANT, District Judge.*
 CHOY, Circuit Judge:
 
 
 1
 Sheffield, on behalf of his client Warren, appeals from the district court's dismissal of a petition for habeas corpus. We affirm.
 
 I. STATEMENT OF THE CASE
 
 2
 This case is perplexed by the actions of Warren's two attorneys, by the several convictions and sentences Warren amassed, and by the orders of several judges. The relevant history of this case, as best we can untangle it, is as follows.
 
 
 3
 In 1975, Warren was convicted of collection of credit by extortionate means and received a federal sentence of 12 years. While he was free on bond pending appeal, by its own power Arizona seized him for land fraud and bribery and received his guilty plea. In January 1978, Arizona sentenced him to 54-60 years in prison and incarcerated him, despite his several efforts to assure that any incarceration he might suffer would be in federal prison.
 
 
 4
 After Warren's state conviction but before his incarceration, we affirmed his federal conviction. United States v. Warren, 561 F.2d 763 (9th Cir. 1977). On the same day (September 21, 1977), he was indicted again in federal court, for mail fraud.
 
 
 5
 Due to Warren's attempt to gain certiorari, our mandate regarding his federal conviction and 12-year sentence for extortion did not issue until February 1978; thus, at the time Warren became a state prisoner, he had never been incarcerated under his federal sentence.
 
 
 6
 In late January 1978, Warren wrote from state prison to his wife that inmate members of the "Mexican Mafia" were threatening to kill him immediately for failure to pay protection money, and that he wanted her to get his regular attorney Stewart to do something. On January 26, Stewart visited Warren and told him that the legal outlook was bleak. Warren despairingly wrote his wife, criticizing Stewart's ability. She either interpreted this as an instruction to get a new lawyer or decided on her own to get one Sheffield. On January 30, Sheffield flew from California to Arizona and satisfied himself from the state warden that the threats had been made and that preventing their fulfillment would be difficult. Because the prison was "locked down," Sheffield was not permitted to visit Warren.
 
 
 7
 On February 1, Sheffield filed, in his own name, a petition for a writ of habeas corpus on Warren's behalf in the United States District Court for Arizona.[1] The petition alleged that further confinement, such as would result in Warren's imminent murder, would be a violation of Warren's Eighth Amendment rights, and prayed that Warren be taken immediately into federal custody and transferred to a federal prison until the completion of his 12-year federal sentence.
 
 
 8
 The same day, visiting District Judge Davies summarily denied the petition. Sheffield flew back to California and at 6:30 that evening obtained from Circuit Judge Hufstedler an order committing Warren to federal custody pending a district court hearing to determine whether that court had habeas corpus jurisdiction to transfer Warren to federal custody for the duration of his federal sentence. The hearing was eventually fixed for February 10.
 
 
 9
 On February 6, Stewart negotiated a plea bargain as to the federal mail fraud charges. On February 8, Warren was brought before District Judge Craig to plead and be sentenced. Stewart represented Warren there, and in answer to Judge Craig's question indicated that he knew of Sheffield's habeas corpus action. Judge Craig stated his opinion that the United States had jurisdiction over Warren as a result of the present mail fraud action, imposed a five-year sentence to run concurrently with the previous federal sentence, and "remanded (Warren) to the custody of the United States Marshal for imprisonment as of now." In his formal judgment, dated February 8, Judge Craig ordered "that the defendant be committed to federal custody forthwith."
 
 
 10
 Two days later, on February 10, Sheffield appeared for the scheduled jurisdictional hearing before Judge Davies. The district court decided that it had no jurisdiction, dismissed the petition, and ordered the federal marshal to surrender Warren to state prison.
 
 
 11
 This Court refused to grant Sheffield's quick request for a stay, but directed that Warren be safely lodged in the state prison hospital or diagnostic facility. And there he stayed, until in 1979 Stewart won a Rule 35 motion before Judge Craig to transfer Warren to federal custody. For the story of that motion, and this Court's reversal of the salient parts of Judge Craig's order, see United States v. Warren, 610 F.2d 680 (9th Cir. 1980). At the time of oral argument of the present appeal, Warren was in federal prison. We do not know if he has yet been returned to state prison.
 
 II. ANALYSIS
 
 12
 On February 1, when Sheffield filed for federal habeas on Warren's behalf, the district court had no jurisdiction to consider the petition. There was no jurisdiction under 28 U.S.C. § 2241(c)(1),[2] because Warren was not then in federal custody or constructive federal custody. While he was free on bond pending appeal of his first federal sentence, by its own power Arizona seized, tried and incarcerated him. Thus Warren was wholly a state prisoner. The situation was distinguishable from those cases where the federal authorities "loan" a prisoner to a state for trial or designate a state prison as the place for service of his federal sentence, but arguably retain "constructive federal custody" of him. Warren was already a state prisoner when our mandate for his federal imprisonment finally went down; since the federal prison officials never had him, they could not have "loaned" him.
 
 
 13
 Nor, as a state prisoner, could Warren qualify under 28 U.S.C. § 2254,[3] which requires exhaustion of available state remedies. He had not sought state habeas corpus, which was "available" within the meaning of § 2254.
 
 
 14
 Thus District Judge Davies did not err by denying the petition the same day it was filed.
 
 
 15
 The propriety of the February 1 order of Judge Hufstedler and the February 8 order of Judge Craig are not before us on review, so we accept those orders as legally valid. At the February 10 jurisdictional hearing, Judge Davies was obliged to consider whether there was jurisdiction as of that day. Even if Judge Davies could have considered Warren a state prisoner for the purposes of 28 U.S.C. § 2254 on February 10 despite the temporary federal custody ordered by Judge Hufstedler, he should have honored Judge Craig's order which "permanently" removed Warren from the power of the state and committed him instead to federal custody.
 
 
 16
 Therefore, on February 10 Warren was a federal prisoner, whose attorney was petitioning a federal court for a writ of habeas corpus. Accordingly, there was jurisdiction under 28 U.S.C. § 2241(c)(1), with no requirement that state remedies be exhausted.
 
 
 17
 On the other hand, since on February 10 Warren had already obtained through Judge Craig's order the relief sought for him in Sheffield's petition, the petition should have been dismissed as moot. Therefore, although Judge Davies' rationale was erroneous, his disposition of the case was correct.
 
 
 18
 Moreover, we see no reason to remand. If Warren is still in federal custody, the petition will still be moot. If he is in state custody, the district court has no jurisdiction because he has not exhausted his state remedies.
 
 
 19
 AFFIRMED.
 
 
 
 *
 Honorable Robert A. Grant, Senior United States District Judge for the Northern District of Indiana, sitting by designation
 
 
 [1]
 Sheffield, a California lawyer, presumably followed this procedure because he was not a member of the Arizona federal bar and because Warren himself could not sign a petition immediately
 We are satisfied that it was permissible, although irregular, for Sheffield to file the petition in his own name on behalf of Warren, the real party in interest. "Application for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf." 28 U.S.C. § 2242. This statute "recognizes the right of one person to sue for habeas corpus to secure the release of another person," but only where the application shows why the prisoner did not sign and verify the complaint, and where the next friend is not an intruder or uninvited meddler. Wilson v. Dixon, 256 F.2d 536, 537-38 (9th Cir.), cert. denied, 358 U.S. 856, 79 S.Ct. 89, 3 L.Ed.2d 90 (1958); see Weber v. Garza, 570 F.2d 511, 513-14 (5th Cir. 1978). Warren could not sign and verify the petition because the prison was "locked down." Sheffield was not an uninvited meddler; Mrs. Warren retained him upon reasonably construing her husband's expressions. Although Sheffield was not an Arizona lawyer, under the urgent circumstances it was acceptable for him to serve as next friend.
 
 
 [2]
 "The writ of habeas corpus shall not extend to a prisoner unless . . . (h)e is in custody under or by color of the authority of the United States." 28 U.S.C. § 2241(c)(1)
 
 
 [3]
 (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States
 (b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.
 (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.
 28 U.S.C. § 2254(a)-(c).