Estelle M. FENTON, Plaintiff–Appellee, Cross–Appellant,

v.

FEDERAL INSURANCE ADMINISTRA- TOR and John W. Macy, Director of the Federal Emergency Management Agen- cy, Defendants–Appellants, Cross–Ap- pellees.

No. 79–1356.

United States Court of Appeals, Fifth Circuit.

Jan. 5, 1981.

Patricia G. Reeves, William Kanter, Nan- cy M. Floreen, Appellate Staff, Civil Div.,

Dept. of Justice, Washington, D. C., for defendants–appellants, cross–appellees.

Wolfson, Urich & Associates, P.A., Stephen C. Shenkman, Robert Urich, Miami, Fla., for plaintiff–appellee, cross–appellant.

Before RONEY, HILL and FAY, Circuit Judges.

RONEY, Circuit Judge:

This controversy arises under the Federal Crime Insurance Act, 12 U.S.C.A. § 1749bbb–10a *et seq.* (1980). Plaintiff recovered for burglary losses under an insurance policy issued pursuant to the Act. On appeal, defendants argue that the policy had lapsed prior to the burglary for nonpayment of an installment premium. We affirm the district court's decision that the nonpayment was excused because plaintiff failed to receive the bill notifying her that the installment was due.

Plaintiff cross–appeals from the denial of attorney's fees, which she claims are allowable under Florida insurance law. We affirm the denial on the ground that federal law preempts Florida law and does not permit the recovery of attorney's fees in a suit to enforce coverage under this type of policy.

The facts, stipulated by the parties, are not in dispute. On June 25, 1975, the plaintiff, Estelle Fenton, submitted an application for a Federal Crime Insurance policy. This coverage is provided by the Department of Housing and Urban Development and the Federal Insurance Administrator ("FIA"), the defendants in this action.

The premium for the policy was payable in annual or semiannual installments at the option of the applicant. Fenton elected to pay semiannually and enclosed a check for the first installment with her application. A policy was issued, with coverage effective from July 7, 1975. The policy did not indicate when the second installment would be due.

On February 10, 1976, Fenton's residence was burglarized, and she sought recovery under the policy for the property loss. The FIA denied coverage, however, contending that the policy lapsed approximately a month prior to the theft because Fenton had not paid the second installment. Fenton admitted nonpayment, but argued that she failed to pay because she had never received a bill notifying her that the premium was due. The parties stipulated that a bill for the second installment was mailed to plaintiff at least 45 days prior to the due date.

The lawsuit was tried without a jury. The district court held that receipt of the bill, not mailing, controlled whether the policy could be cancelled for nonpayment of premium. Since the court found that Fenton had not received the bill, it held that the policy was still in effect at the time of the burglary. The court awarded her the amount of loss previously stipulated by the parties.

I. *Failure to Receive the Bill as an Excuse for Nonpayment*

The controlling issue on appeal is whether Fenton's failure to receive the bill for the second installment excuses her nonpayment. The resolution of this issue depends upon the provisions of the policy.

If an insurance policy provides that the mere mailing of the bill is sufficient proof of notice that a payment is due, then the policy may be cancelled for nonpayment even if the insured never in fact receives the bill. If the policy does not provide that mailing is sufficient notice, however, the insured must be afforded an opportunity to show lack of receipt as an excuse for nonpayment. *See Kavanaugh v. Security Trust & Life Insurance Co.,* 117 Tenn. 33, 96 S.W. 499 (1906). *See generally* 45 C.J.S. *Insurance,* § 616(b) (1946).

Defendants concede that neither the application form nor the policy itself expressly provides that the mailing of the bill is sufficient notice that the second installment is due. They contend, however, that a reasonable interpretation of the documents is that

such a provision is "contemplated" or "implied." We reject this contention, in light of the settled law that ambiguity in the policy provisions will be resolved in favor of the insured. *See, e. g., Ranger Insurance Co. v. Algie*, 482 F.2d 861, 863 (5th Cir. 1973); *Connecticut General Life Insurance Co. v. Craton*, 405 F.2d 41, 49 (5th Cir. 1968).

■ The application form states only that the second installment "will be billed" approximately 45 days before its due date, and that policy coverage will terminate without further notice if payment is not received by the due date. It is completely silent on whether mailing or receipt constitutes proof of notice that payment is due. The policy itself does state that the mailing of a notice of *cancellation* is sufficient proof of notice, but there is no indication that this notice–by–mailing language was intended to apply as well to the bill for the second installment. In fact, the express inclusion of this language in the notice of cancellation provision but not in the billing notice provision weighs against defendants' contention that the policy contemplates mere mailing of the bill as sufficient proof of notice.

Defendants' interpretation of the policy also appears untenable in light of the crucial role the bill plays under this policy in notifying the insured of when payment for the second installment is due. The application and the policy do not expressly indicate this due date. Although it may be reasonable to interpret these documents as implying that, since the payments were scheduled on a semiannual basis, the second installment would be due six months after the first, there were at least two dates from which the six months could begin: the date Fenton submitted the application with the first installment (June 25, 1975), or the effective date of the policy (July 7, 1975). The application provided only that the second installment would be "billed." Thus, the bill was the first and only indication to Fenton of exactly when she was expected to pay the premium.

Defendants contend a contrary interpretation is supported by reading the billing clause in the application form in conjunction with the cancellation clause in the policy. Defendants argue that the language in the billing clause, and in the bill sent, that coverage will terminate for nonpayment is in effect a notice of cancellation. Thus, the bill sent pursuant to the billing clause is not only a notice that payment is due but also a notice of cancellation. Since under the policy's cancellation clause a notice of cancellation is effective upon mailing, the entire bill should also be effective upon mailing. This interpretation, defendants conclude, is necessary to give effect to the express policy provision regarding notice of cancellation.

The language in the application's billing clause which refers to termination may, as defendants contend, constitute a valid notice of cancellation. Although the policy appears to contemplate the mailing of a separate notice of cancellation, it also permits the inclusion of a cancellation notice in the bill. By deciding to mail the request for payment and the cancellation notice together, however, defendants may not incorporate the policy clause which provides that mailing is sufficient proof of notice of cancellation. To do so would graft onto the policy and the application form a notice provision which, as shown above, may not otherwise be fairly implied.

We hold that the insurance policy issued to Fenton does not expressly or impliedly provide that mailing of the bill is sufficient proof of notice that payment for the second installment is due. The district court properly held that Fenton's failure to receive the bill excused her nonpayment, and that the policy was therefore still in effect at the time of the burglary.

The policy involved here is a one–year policy, not a policy renewable on payment of premiums. Failure to pay required cancellation or termination of the existing policy. The decision here does not address the issue of notice with respect to a renewable policy of indefinite term.

## II. Attorney's Fees

In her cross–appeal, Fenton claims that she is entitled to attorney's fees under Fla. Stat.Ann. § 627.428(1), which provides that fees may be awarded when a policy holder establishes that an insurer wrongfully denied coverage. The district court denied this relief, holding that the Florida statute is preempted by federal law. We affirm.

Under federal law, attorney's fees may be awarded against the United States or its agencies only if such an award is specifically provided by statute. 28 U.S. C.A. § 2412 (1978). *See also Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 267–68, 95 S.Ct. 1612, 1626–27, 44 L.Ed.2d 141 (1975); *National Association of Letter Carriers v. United States Postal Service*, 590 F.2d 1171, 1176 (D.C.Cir.1978). Moreover, as a limited waiver of sovereign immunity, section 2412 is to be strictly observed. *Rhode Island Committee on Energy v. General Services Administration*, 561 F.2d 397, 405 (1st Cir. 1977).

The Federal Crime Insurance Act does not specifically provide for the assessment of attorney's fees. Nor does it provide for the application of state law concerning the award of such fees. A regulation promulgated under the Act expressly mandates the preemption of state law by providing that federal crime insurance policies shall not be subject to "any State or local tax or insurance law or regulation." 44 C.F.R. § 80.-3(b).

Fenton contends that Florida law allowing attorney's fees should be applied through the McCarran–Ferguson Act, 15 U.S.C.A. § 1012(b), which provides that federal law shall not be construed to preempt state law enacted for the purpose of regulating the business of insurance unless the federal law itself specifically relates to the business of insurance. This Act, however, does not mandate the application of the Florida statute, even if it is assumed that this state law is for the purpose of regulating the business of insurance. Under the terms of the McCarran–Ferguson Act, the Federal Crime Insurance Act preempts Florida law because it obviously relates to the "business of insurance." In fact, it establishes a business of insurance to be operated by the federal government.

The award of attorney's fees was considered with regard to a federal insurance program in *West v. Harris*, 573 F.2d 873 (5th Cir. 1978). In *West*, this Court held that a prevailing plaintiff in a suit on a federal flood insurance policy may not recover attorney's fees which are allowable under state law, because disputes under the Flood Insurance Act are governed solely by federal law. The flood insurance program resembles the program here in that both are national in scope and subject to extensive federal regulation. Moreover, neither program competes with the private insurance industry, but instead provides coverage at affordable rates that would otherwise be unavailable. A prohibition against the award of attorney's fees, therefore, serves to reduce the cost to the federal government of operating these insurance programs.

We hold that the Federal Crime Insurance Act does not authorize the assessment of attorney's fees against the United States, and that it preempts Florida law allowing such fees.

AFFIRMED.