Kathie BOUDIN, Petitioner,

v.

Dale THOMAS, Warden of MCC, Norman Carlson, Director of Federal Bureau of Prisons, John Martin, United States Attorney, Kenneth Gribetz, District Attorney of Rockland County, Thomas Coughlin, III, Commissioner of Corrections of the State of New York and Elijah Coleman, Superintendent of the Rockland County Jail, Respondents.

No. 81 Civ. 7190 (KTD).

United States District Court, S.D. New York.

Dec. 13, 1982.

Frankfurt, Garbus, Klein & Selz, New York City, for petitioner; Martin Garbus, Katherine Stone, Ellen J. Winner, New York City, of counsel.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for respondents Thomas, Carlson, Martin and Bureau of Prisons; Carolyn Simpson, Jane E. Bloom, Asst. U.S. Attys., New York City, of counsel.

Robert Abrams, Atty. Gen. of the State of New York, New York City, for State respondents; Eleanor Janosek Doyle, Daniel Kinburn, Asst. Attys. Gen., New York City, of counsel.

Marc L. Parris, County Atty., County of Rockland, New City, N.Y., for Rockland respondents; Martin Hurwitz, Asst. County Atty., New City, N.Y., of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

On or about October 20, 1981, Kathie Boudin was arrested for her alleged involvement in the robbery of a Brinks armored truck and the murders of two Nyack police officers and one Brinks guard. Ms. Boudin, a state prisoner, was then transported to the Metropolitan Correctional Center ("MCC") in New York City pursuant to an agreement reached between John Martin, the United States Attorney for the Southern District of New York, and Kenneth Gribetz, the Rockland County District Attorney. The conditions of her confinement were the subject of a vigorously litigated habeas corpus lawsuit.[1] On January 7, 1982, petitioner's writ of habeas corpus was granted and the federal defendants were ordered to release Ms. Boudin immediately from administrative detention, to place her into the MCC's general female population, and to institute contact visits between Ms. Boudin, her infant child, and her approved visitors.[2]

The federal government appealed my decision to the Second Circuit on March 8, 1982. The supplemental petition submitted by Ms. Boudin challenging the condition of her confinement at Woodbourne was still pending before me at that time. After futile requests by both sides to hold the appeal in suspense pending the outcome of the supplemental petition, (Exhibits A & B, attached to Simpson Affidavit), oral argument was held on June 7, 1982. Three days later the Second Circuit, 697 F.2d 288, dismissed the appeal and remanded the case "to the District Court without prejudice to the right of the parties to seek appellate review following a determination by that court of the matters now pending before it." Exhibit C, attached to the Simpson Affidavit.

Petitioner now moves for an award of attorneys' fees and costs against the federal respondent[3] for efforts made on her behalf in the original petition and in the appeal of my January 7th opinion and order.[4] Three alternative grounds are presented for the requested award: First, petitioner contends that the bad faith exhibited by the respondents justifies a common law award of attorneys' fees; second, petitioner argues that because 42 U.S.C. § 1983 was a basis for her original petition, she is entitled to attorneys' fees as a prevailing party under 42 U.S.C. § 1988; and third, petitioner states that an award is appropriate because the federal government's position taken

---

1. Familiarity with my two prior opinions in this case, reported at 533 F.Supp. 786 and 543 F.Supp. 686 is assumed.

2. These orders were never effectuated. Ms. Boudin was transferred to the Woodbourne Correctional Facility, a New York State Facility, in the middle of the night and hours before my January 7th opinion was filed.

3. Petitioner's moves for fees and costs incurred on the original petition and on the appeal.

Only the federal respondents were responsible for Ms. Boudin's conditions of confinement giving rise to this lawsuit. Accordingly, the New York State and Rockland County respondents are not subject to liability in this instant motion.

4. Petitioner's motion requesting attorneys' fees for expenses incurred in support of the supplemental petition was withdrawn by letter on September 15, 1982.

during this civil proceeding was not substantially justified. 28 U.S.C. § 2412(d)(1)(A). It is on the basis of this final ground that petitioner's motion is granted.[5]

*28 U.S.C. § 2412(d)(1)(A)*

The Equal Access to Justice Act, which became effective on October 1, 1981, provides in pertinent part: [6]

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (Supp. IV 1980). This statutory provision mandates an award of costs and fees to a prevailing party in a civil action against the United States unless the government's position was either "substantially justified or ... special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

■ Respondent does not contest that Ms. Boudin prevailed in her habeas corpus petition, but strongly disagrees with the characterization of a habeas corpus petition as a civil proceeding. Admittedly, a habeas corpus lawsuit is "unique." *Harris v. Nelson,* 394 U.S. 286, 294, 89 S.Ct. 1082, 1087, 22 L.Ed.2d 281 (1969). This uniqueness, however, does not destroy the "well settled [proposition] that habeas corpus is a civil proceeding." *Browder v. Director, Dept. of Corrections of Illinois,* 434 U.S. 257, 269, 98 S.Ct. 556, 563, 54 L.Ed.2d 521 (1978). Ms. Boudin's motion for fees and costs in this civil action, therefore, is properly brought under 28 U.S.C. § 2412(d)(1)(A).

■ Respondent further argues that the doctrine of sovereign immunity operates to preclude any recovery against the federal government. My finding, however, that a habeas corpus petition falls within the statutory guidelines of 28 U.S.C. § 2412(d)(1)(A), provides the express statutory support necessary for an award of attorneys' fees and costs against the government. This express language constitutes a waiver of the federal government's sovereign immunity. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 267–68, 95 S.Ct. 1612, 1626–27, 44 L.Ed.2d 141 (1975); *Fenton v. Federal Insurance Administrator,* 633 F.2d 1119, 1122 (5th Cir.1981).

■ The remaining issue, which poses a more difficult question, is whether the government's position [7] was "substantially justified." This language tracks the wording of Fed.R.Civ.P. 37(a)(4) which provides for an award to cover the expenses of a motion compelling discovery "unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust." [8] The "substantially justified" language "provides in effect that expenses should ordinarily be awarded unless a court finds that the losing party acted justifiably in carrying his point to court." Fed.R.Civ.P. 37 advisory committee note to

---

**5.** The award of attorneys' fees under 28 U.S.C. § 2412(d)(1)(A) obviates the need to determine either respondent's bad faith or the applicability of § 1988 to the instant appeal. Even if these grounds were substantiated, a difficult task indeed, I would not order a duplicative award.

**6.** To qualify for the requested award, Ms. Boudin's net worth must not exceed $1,000,000. 28 U.S.C. § 2412(d)(2)(B). This requirement has been met. Exhibit P, attached to Petitioner's Notice of Motion.

**7.** The government's position includes both its position in "defending the litigation and the governmental action upon which suit is based." *Nunes-Correia v. Haig,* 543 F.Supp. at 816. *Photo Data, Inc. v. Sawyer,* 533 F.Supp. 348, 352 (D.D.C.1982).

**8.** The advisory committee notes on Rule 37(a)(4) further bemoan inadequate use of "the most important available sanction to deter abusive resort to the judiciary."

1970 amendments. The legislative history of the Equal Access to Justice Act states that its "substantially justified" language was adopted from Rule 37. H.Rep. No. 1418, 96th Cong., 2d Sess. 18, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4953, 4984, 4997. Therefore, a similar construction will apply to section 2412(d)(1)(A) and an award will be made unless the government justifiably defended the instant proceeding. This construction is consistent with the purpose of the Equal Access to Justice Act: "to supplant the economic deterrence to defending against unreasonable government action." *Photo Data, Inc. v. Sawyer,* 533 F.Supp. 348, 352 (D.D.C.1982); *see also* Equal Access to Justice Act, Pub.L. No. 96–481, § 202, 94 Stat. 2325 (1980).

The standard to apply in evaluating the government's justification also is contested by the parties. Petitioner claims that a standard slightly more stringent than the reasonableness standard is appropriate, while respondent contends that the reasonableness standard is applicable. *Compare Nunes-Correia v. Haig,* 543 F.Supp. 812, 817 (D.D.C.1982) ("the applicable standard is slightly above one based on reasonableness"), *with* H.Rep. No. 1418, 96th Cong., 2d Sess. 10, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4989 ("The test of whether or not a Government action is substantially justified is essentially one of reasonableness."). The differences between the suggested standards are irrelevant in the instant case because respondent, who bears the burden of proving substantial justification, *id.,* has failed to even prove that its conduct was reasonable.

In my January 7th opinion I found that the MCC's placement of Ms. Boudin in indefinite administrative detention (solitary confinement) and its absolute denial of contact visits were both unreasonable and unwarranted. The government's defense of the MCC's policies was equally unreasonable. The MCC, as one would expect of a correctional facility located in the nation's largest city, has housed numerous notorious detainees without having resorted to the unique conditions imposed on Ms. Boudin. "The nature of her crime [and] her alleged but unsubstantiated affiliation with a terrorist organization is not sufficient cause to single out Ms. Boudin for the type of treatment she received." 533 F.Supp. at 791.

The government was unable to present legitimate reasons why Ms. Boudin had to remain isolated from the general female population in totally restricted administrative detention. The prison regulations themselves forbade this segregation without evidence that Ms. Boudin constituted a "serious threat to life, property, self, staff, other inmates or to the security of the institution." 28 C.F.R. § 541.20(a) (1980). The government's unwillingness to follow its own rules and protect the institution's rational security needs as well as Ms. Boudin's needs was unjustified.

The blanket denial of all contact visits, especially with petitioner's infant child, was also "an unreasonable exaggerated response in violation of *Wolfish.*" 533 F.Supp. at 793. In *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Supreme Court recognized that prison officials are to be afforded broad discretion in administering their internal affairs, but this does not in turn allow these officials to impose unreasonably harsh conditions with impunity. The government argues that "[t]he position of respondent's in the litigation was not frivolous but was seriously pressed in support of the discretionary functions and authority of the officials of the Bureau of Prisons under Supreme Court precedent." Memorandum of Law in Opposition to Petitioner's Application for an Award of Attorney's Fees at 22. Regardless of the possible legitimate policy reasons underlying the government's stance, for purposes of this motion it is the legal bases for its position and not its policy concerns which are under scrutiny. *Nunes-Correia v. Haig,* 543 F.Supp. at 818, n. 5.

I am not suggesting that the government's position in this hotly contested liti-

gation[9] was frivolous, but I am suggesting that in light of the overall factual record, the federal respondent's defense of the habeas corpus petition was overzealous and unjustified. Accordingly, I find that the federal respondent's position in this litigation was not "substantially justified," thereby mandating an award of attorneys' fees and costs. 28 U.S.C. § 2412(d)(1)(A). Furthermore, no "special circumstances" exist to support a finding that an award of fees and costs in this case would be "unjust." 28 U.S.C. § 2412(d)(1)(A). On the contrary, an award in the instant case will serve to effectuate the purpose of the Equal Access to Justice Act and encourage legal challenges to unreasonable government action. H.Rep. No. 1418, 96th Cong., 2d Sess. 5 *reprinted in* 1980 U.S.Code Cong. & Ad. News 4984.

A question remains as to whether the time expended in support of the appeal should be included in the award. Respondent challenges whether Ms. Boudin actually prevailed when her appeal was dismissed. The Second Circuit recently held in *Hastings v. Maine-Endwell Central School District, New York,* 676 F.2d 893 (2d Cir.1982), that the district court is authorized to award attorneys' fees to a prevailing party under 42 U.S.C. § 1988 "by means of a dismissal of the appeal as well as to one who has prevailed by affirmance." 676 F.2d at 896–97. Both sections 1988 and 2412(d)(1)(A) were enacted to encourage attorneys to judicially challenge alleged unreasonable and unconstitutional government violations. Therefore, because section 1988 was construed to authorize attorneys' fees and costs in *Hastings,* which involved the dismissal of an appeal, I construe section 2412(d)(1)(A) to authorize a parallel award in the instant case.

The last outstanding issue is the hourly rate of the award. The statute provides that "attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). Petitioner argues that her lawyers should be compensated at the rate regularly charged their clients rather than at the statutory rate. The attorneys representing Ms. Boudin are obviously highly qualified, but the instant circumstances do not warrant deviation from the proscribed schedule. Furthermore, I do not contest that the rates requested are the prevailing rates in New York City. Congress has given the district judge discretion to increase the compensation rate to account for "cost of living" increases. I do not have discretion, however, to increase the fee rate to account for a higher market rate. Moreover, I find that the "cost of living" factor permits an increase of the rate in due time, but not within the first years of the statute's existence. I am similarly not swayed by petitioner's argument that the Rockland County Court would have prohibited Ms. Boudin's access to the attorneys representing her in this civil action if the attorneys were different from her criminal counsel. Accordingly, the $75 hourly rate will be applied herein.[10]

Respondent requests an opportunity to address the amount of any award. This request is granted. Furthermore, in order to calculate costs owing to petitioner, respondent is ordered to submit "the highest rate of compensation for expert witnesses paid by the United States." 28 U.S.C. § 2412(d)(2)(A). All respondent's papers are to be submitted within twenty (20) days of this memorandum and order.

In sum, petitioner's motion for attorneys' fees and costs is granted pursuant to 28 U.S.C. § 2412(d)(1)(A). The determination of the amount of the fee award and the award for costs is held in abeyance pending respondent's submissions within twenty (20) days of the date below.

SO ORDERED.

9. Everything from the repair of Ms. Boudin's eyeglasses to the temperature in her cell was a subject of litigation.

10. The rate provided for attorneys by the section is substantially in excess of the amount paid to District Judges.