Kathie **BOUDIN,**
Plaintiff-Appellee-Cross-Appellant,

v.

Dale **THOMAS,** Warden of Metropolitan Correctional Facility, Norman Carlson, Director of Federal Bureau of Prisons, John S. Martin, Jr., United States Attorney, Thomas Coughlin, the Commissioner of Correction of the State, Kenneth Gribetz, District Attorney of Rockland County and Elijah Coleman, Superintendent of the Rockland County Jail, Defendants,

Dale **Thomas,** Warden of Metropolitan Correctional Facility, Norman Carlson, Director of Federal Bureau of Prisons, and John S. Martin, Jr., United States Attorney, Defendants-Appellants-Cross-Appellees.

Nos. 467, 468, Dockets 83–2170, 83–2174.

United States Court of Appeals,
Second Circuit.

Argued Dec. 16, 1983.
Decided April 17, 1984.

Ellen J. Winner, New York City (Martin Garbus, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, Frankfurt, Garbus, Klein & Selz, New York City, of counsel), for plaintiff-appellee-cross-appellant.

Carolyn L. Simpson, Asst. U.S. Atty., S.D.N.Y., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Peter C. Salerno, Asst. U.S. Atty., S.D.N.Y., New York City, of counsel), for defendants-appellants-cross-appellees.

Before MESKILL, CARDAMONE and PIERCE, Circuit Judges.

MESKILL, Circuit Judge:

The United States appeals from an order of the United States District Court for the Southern District of New York, Duffy, J., granting appellee Kathie Boudin attorney's fees of $37,740 under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 (1982). The fees were based on earlier litigation over the conditions of Boudin's confinement at the Metropolitan Correctional Center (MCC), a federal correctional institution in New York City. Boudin cross-appealed from the district court's failure to consider her motion for attorney's fees under 42 U.S.C. § 1988 (Supp. IV 1980), its award of only half of the fees requested in her EAJA motion, its denial of fees based on reconstructed records and its denial of fees for expert witnesses. We reverse the judgment of the district court on the main appeal, affirm on the cross-appeal for fees under section 1988 and dismiss the remainder of the cross-appeal as moot.

## BACKGROUND

Kathie Boudin was arrested on October 20, 1981 while fleeing the scene of an armed robbery of a Brinks truck during which a Brinks guard and two policemen were killed. She was not alleged to have been armed. Boudin was indicted on three counts of second degree murder and six counts of first degree robbery, as well as two assault counts and two theft counts.

Initially, Boudin was taken to the Rockland County Jail. Officials there were concerned with the lack of adequate security measures at the jail and requested her transfer to the custody of the Federal Bureau of Prisons. Boudin arrived at the MCC on October 26, 1981.

Boudin's alleged connections to terrorists in the Weather Underground and the Black Liberation Army were the subject of widespread news articles as well as FBI reports and reports of other law enforcement agencies. Prison officials at the MCC, aware of these reports and of the views of the law enforcement agencies that Boudin might be connected to the terrorist groups, feared a violent escape attempt. Their response was to place Boudin and her co-defendant Judith Clark in "administrative detention." This consisted of confining Boudin and Clark to their cells (with meals served there) except for one hour of recreation alone in the hallway next to their cells.

Boudin and Clark were separated from each other, as well as from the rest of the prison inmates. Both were denied contact visits with anyone, including their infant children. Non-contact visits were allowed with immediate family members two days a week for two hour time periods and unlimited attorney visits were allowed between 8:00 a.m. and 8:30 p.m.

Boudin challenged these conditions in the district court. On January 7, 1982, the district court granted the relief Boudin sought. It ordered Boudin released from administrative detention and returned to the general prison population and also ordered the MCC to allow Boudin contact visits.[1] 533 F.Supp. 786 (S.D.N.Y.1982). Several hours before the district court's opinion was filed, the MCC transferred Boudin to Woodbourne, a New York state facility. The government's motion to have the January 7 order vacated as moot was denied and the government's appeal of that order was later dismissed without prejudice by order of this Court. *Boudin v. Thomas*, No. 82–2068 (2d Cir. June 10, 1982) (reprinted in Supp.J.App. at 450). 697 F.2d 288.

Boudin subsequently moved for attorney's fees under the EAJA and under the attorney's fees provision of the Civil Rights Act, 42 U.S.C. § 1988 (Supp. IV 1980). The district court granted the motion under the EAJA. 554 F.Supp. 703 (S.D.N.Y.1982). It did not consider the motion under section 1988 because it considered an award under that section "duplicative." *Id.* at 705 n. 5. After the parties submitted memoranda on the proper amount of attorney's fees, the district court awarded half of Boudin's request of $75,480 on the ground that the time spent on Boudin's petition was "obviously excessive in light of the petition presented to the court and its legal issues." 559 F.Supp. 521, 522 (S.D.N.Y.1983). It also denied fees for the expert witnesses employed by Boudin. *Id.* This appeal and cross-appeal followed.

## DISCUSSION

◼ This appeal concerns the interpretation of the Equal Access to Justice Act of 1980, Pub.L. 96–481, § 204(a), 94 Stat. 2321, 2327–29. For purposes of this appeal, the pertinent part of the EAJA is 28 U.S.C. § 2412(d)(1)(A) (1982), which states:

Except as otherwise specifically provided by statute, a court shall award to a *prevailing party* other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party *in any civil action* (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, *unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.*

(emphasis added). In short, the Act authorizes the award of attorney's fees to a party litigating against the government when the party claiming attorney's fees was the "prevailing party" in a "civil action" unless the government successfully bears the burden of showing that its position was "substantially justified," *see Environmental Defense Fund, Inc. v. Watt*, 722 F.2d 1081, 1085 (2d Cir.1983), or special circumstances make an award unjust.

A. *Whether Boudin Was the "Prevailing Party"*

◼ Boudin was the "prevailing party" in both the original litigation and the government's appeal. Her success in the district court action is obvious. As for the question of her success on the government's earlier appeal, this Court's decision in *Hastings v. Maine-Endwell Central School District*, 676 F.2d 893, 896–97 (2d Cir.1982), supports Boudin's contention that attorney's fees may be awarded under the EAJA to a party who has procured a dismissal of the appeal.

---

1. The relief that was granted to Boudin was also granted to co-defendant Clark, where appropri-

ate. 533 F.Supp. 786, 787 n. 1 (S.D.N.Y.1982).

The government cites *Hanrahan v. Hampton*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), for the proposition that fees should not be awarded "upon a procedural decision such as this." Br. for Appellants at 32. *Hanrahan*, however, only held that attorney's fees should be denied where the moving party had not prevailed on the merits of any of its claims. 446 U.S. at 758, That is not the case here. Instead, Boudin prevailed on the merits in the district court and this Court refused to vacate the district court's order. The original decision on which Boudin prevailed was left intact, making Boudin the "prevailing party" on appeal for the purposes of section 2412(d)(1).

### B. Whether the Action Was a "Civil Action" Under Section 2412

In order to determine whether Boudin's original action was "civil" for purposes of section 2412(d)(1), we must first determine the nature of that action. Boudin styled her complaint as a "verified petition for writ of habeas corpus," J.App. at 5, but also asserted that it was "in essence a *Bivens* action." Reply Br. of Cross-Appellant at 18. We cannot rely, however, on the labels attached to the claim. Rather, we look to the substance of the remedy she sought. In this case, Boudin sought to be physically moved in order to remedy past constitutional violations. This is in substance a petition for a writ of habeas corpus.

In *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the Supreme Court held that habeas corpus was the exclusive remedy for prisoners challenging the fact or duration of their confinement. An action under 42 U.S.C. § 1983 (Supp. III 1979) was held not to be available, even against prison administrators, where the challenge "is just as close to the core of habeas corpus as an attack on the prisoner's conviction, for it goes directly to the constitutionality of his physical confinement itself and seeks either immediate release from that confinement or the shortening of its duration." *Id.* at 489, 93 S.Ct. at 1836.

*Preiser* stated that habeas might sometimes be available to challenge the *conditions* of confinement. Although it did not set forth those situations, it did state that one of them might be "[w]hen a prisoner is put under additional and unconstitutional restraints during his lawful custody." *Id.* at 499, 93 S.Ct. at 1841. Habeas involves bringing the body of a prisoner before a court for an inquiry into the validity of his confinement, *id.* at 484–86, 93 S.Ct. at 1833–834; *Price v. Johnston*, 334 U.S. 266, 283, 68 S.Ct. 1049, 1059, 92 L.Ed. 1356 (1948), and the remedy granted by a court on the body of a prisoner need not be limited to the four or five remedies arising from the common law forms of the writ. *Price v. Johnston*, 334 U.S. at 278–84 & n. 9, 68 S.Ct. at 1056–59 & n. 9 (granting habeas to allow prisoner to argue his own appeal). Thus, as long as a prisoner meets the custody or other jurisdictional requirements of 28 U.S.C. § 2241 (1982), habeas is the appropriate action to challenge conditions of confinement where the prisoner seeks to be moved in order to remedy past constitutional violations. *See Roba v. United States*, 604 F.2d 215, 219 (2d Cir. 1979) (habeas appropriate vehicle to litigate propriety of transferring seriously ill prisoner as advance challenge to "allegedly unlawful conditions of his imminent custody"); *see also Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir.) (habeas the appropriate remedy when prisoner seeks transfer from disciplinary confinement), *cert. denied*, —— U.S. ——, 104 S.Ct. 189, 78 L.Ed.2d 167 (1983); *Ali v. Gibson*, 631 F.2d 1126, 1135 (3d Cir.1980) (court entertains and rejects on merits habeas petition seeking transfer based on conditions of confinement), *cert. denied*, 449 U.S. 1129, 101 S.Ct. 951, 67 L.Ed.2d 117 (1981); *Streeter v. Hopper*, 618 F.2d 1178, 1181 (5th Cir. 1980) (complaint seeking release from administrative segregation without due process appropriately treated as a habeas petition); *Warren v. Cardwell*, 621 F.2d 319, 322 (9th Cir.1980) (court requires exhaustion of state remedies when prisoner

sought transfer to federal prison); *but see Walker v. Lockhart*, 713 F.2d 1378 (8th Cir.1983) (court reverses denial of section 1983 claim and orders prisoner's transfer).

■ Boudin was in federal custody and met the requirements of 28 U.S.C. § 2241(c)(1) (1982). She sought to be moved out of administrative segregation because of the prison administration's previous constitutional violations. It is therefore appropriate to treat the part of Boudin's complaint seeking transfer to the general prison population as a petition for a writ of habeas corpus.[2]

■ We next consider whether habeas petitions are "civil actions" under section 2412. We hold that they are not.[3] Appellee's argument to the contrary is that the statute applies to "civil" proceedings, 28 U.S.C. § 2412(d)(1)(A) (1982), that habeas proceedings are generally labeled "civil," *e.g., Browder v. Director, Department of Corrections*, 434 U.S. 257, 269, 98 S.Ct. 556, 563, 54 L.Ed.2d 521 (1978), and that many of the Federal Rules of Civil Procedure apply in habeas proceedings, Fed.R. Civ.P. 81(a)(2); 28 U.S.C. § 2254, Rule 11 (1982). *See* Reply Br. of Cross-Appellant at 20–24. But the "civil" label does not mean that habeas proceedings are entirely civil in nature. *See, e.g., Schlanger v. Seamans*, 401 U.S. 487, 490 n. 4, 91 S.Ct. 995, 997, 28 L.Ed.2d 251 (1971) (28 U.S.C. § 1391(e), applicable in civil proceedings against United States employees or officers, does not apply in habeas proceedings); *Harris v. Nelson*, 394 U.S. 286, 293–94, 89 S.Ct. 1082, 1087–88, 22 L.Ed.2d 281 (1969) (habeas proceeding is "unique," and "civil" label is gross and inexact; Court holds Fed.R.Civ.P. 33 inapplicable to habeas proceedings). The "civil" label is undoubtedly

attached to the extraordinary habeas proceeding to distinguish it from a "criminal" action, which is intended to punish and requires various constitutional guarantees. *See, e.g., Ex parte Tong*, 108 U.S. 556, 559, 2 S.Ct. 871, 872, 27 L.Ed. 826 (1883) (habeas is a civil proceeding because "[p]roceedings to enforce civil rights are civil proceedings, and proceedings for the punishment of crimes are criminal proceedings").

The term "civil action" does not appear in the definitional section of the EAJA. *See* 28 U.S.C. § 2412(d)(2)(A) (1982). Because habeas actions are civil for some purposes but not others, there is an ambiguity on the face of the statute. We must therefore turn to the legislative history of the EAJA to determine whether Congress intended to include habeas petitions within the statute. *Schwartz v. Romnes*, 495 F.2d 844, 849 (2d Cir.1974).

This Court is not persuaded that Congress meant to include the unique habeas corpus proceeding in the category of "any civil action" for the purposes of section 2412. *Cf. Schlanger v. Seamans*, 401 U.S. at 490 n. 4, 91 S.Ct. at 997 n. 4 ("[t]hough habeas corpus is technically 'civil,' it is not automatically subject to all the rules governing ordinary civil actions;" Court examines legislative history and finds no indication that statute providing for nationwide service of process in civil actions against United States officers or employees applies to habeas proceedings). Indeed, for the following reasons, we find that the Act's legislative history and the policies underlying the Act indicate that the Act was not meant to apply to habeas proceedings.

1. *Financial Incentives for Contesting Government Action*

The EAJA was passed in part to ensure that certain individuals, partnerships, cor-

---

**2.** Boudin also asserts that she stated a claim under 42 U.S.C. § 1983 (Supp. III 1979), and is therefore entitled to attorney's fees under 42 U.S.C. § 1988 (Supp. IV 1980). *This contention must be rejected.* The prison officials were not acting under color of state law for the purposes of Boudin's complaint. They may have been so acting in confining Boudin, but this action complained about *how* she was confined, not the fact that she was. Boudin does not refute the

government's evidence that federal officials alone were responsible for the conditions of her confinement.

**3.** *Oguachuba v. INS*, 706 F.2d 93 (2d Cir.1983), provides no precedent for the instant case, as the issue of whether a habeas corpus proceeding is a "civil" action for the purposes of section 2412 was *neither raised nor decided there.*

porations and other organizations would not be deterred from contesting unreasonable government action simply because the amount of money involved would not make hiring a private attorney cost effective. *See, e.g.,* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 5, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4984, 4984.[4] Congress' intent in authorizing fee awards under the EAJA was clearly to ensure that the cost of litigating against unreasonable government action would not be disproportionate to the potential gain from winning the litigation:

> For many citizens, the costs of securing vindication of their rights and the inability to recover attorney fees preclude resort to the adjudicatory process. When the cost of contesting a Government order, for example, exceeds the amount at stake, a party has no realistic choice and no effective remedy. In these cases, it is more practical to endure an injustice than to contest it.

*Id.* at 9, 1980 U.S.Code Cong. & Ad.News at 4988. But unlike civil litigation against the government, there is no need for financial encouragement of habeas proceedings. First, where a (non-indigent) person's liberty or confinement is at stake, the costs will rarely deter the person from resorting to the adjudicatory process. Second, there are no considerations of whether the potential financial gain from a habeas action is outweighed by the costs because a habeas petition is not financial litigation.

Moreover, there is presently an equivalence between the financial criteria used to determine eligibility for government provided counsel in habeas proceedings and in criminal proceedings. Applying the EAJA to habeas proceedings would change that statutory equivalence.[5] A court, in its discretion, may appoint counsel for a habeas petitioner's evidentiary hearing if the petitioner meets the same financial requirement imposed on a criminal defendant who desires appointed counsel. 28 U.S.C. § 2254, Rule 8(c) (1982); 18 U.S.C. § 3006A(g) (1982). The financial requirement for criminal defendants and habeas petitioners alike is an inability to afford private counsel. 18 U.S.C. § 3006A(a), (g) (1982). But the EAJA is expressly inapplicable to criminal proceedings. 28 U.S.C. § 2412(d)(1)(A) (1982). If Congress had wished to change the statutory equivalence between criminal and habeas cases by using the EAJA to authorize the government's funding of counsel in certain habeas cases but not equivalent criminal cases, we believe it would have said so.

Similarly, the purpose of appointing counsel in criminal and habeas cases is to assist those who cannot afford private counsel. *See United States v. Durant,* 545 F.2d 823, 826 (2d Cir.1976); Plan Under the Criminal Justice Act of 1964, at 1 (Feb. 11, 1971) (approved, Judicial Council of the Second Circuit). Individuals with a net worth of under $1 million may be eligible for fees under the EAJA. If the EAJA were a means of providing government funded counsel in certain habeas cases, it would allow habeas petitioners who are virtual millionaires—and can thus easily afford counsel—to recover attorney's fees. Criminal defendants, by contrast, would still only receive government funded counsel if they could not afford counsel, because of their express exclusion from the provisions of the EAJA.

Finally, as discussed above, non-indigent habeas petitioners are much more likely to hire their own counsel than those who litigate against the government over small amounts. Therefore, the considerations behind funding counsel for the two types of litigants are very different. A statute authorizing payment for a private litigant's attorney should not be automatically con-

---

**4.** The EAJA was proposed as a part of the Small Business Export Expansion Act of 1980, which suggests that its drafters more likely meant it to apply to private, money oriented disputes than to litigation over individual liberty or incarceration.

**5.** It would also make mandatory the government's funding of counsel in certain habeas cases when the relevant statutes have made such funding discretionary. *See* 28 U.S.C. § 2254, Rule 8 (1982); 18 U.S.C. § 3006A(g) (1982).

strued to authorize payment for the attorneys of some persons who litigate over their liberty or confinement, merely because the label "civil" is broadly applied to both types of litigation.

### 2. *Absence of Fee Awards in Analogous Habeas Actions*

The Act provides that fees may be awarded against the United States "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." 28 U.S.C. § 2412(b) (1982). *See Premachandra v. Mitts,* 727 F.2d 717, 726 (8th Cir.1984) (fees may be awarded if "the United States was engaged in conduct that, if carried on by some 'other party,' would render that 'other party' liable under a statutory fee shifting provision"); *Lauritzen v. Secretary of the Navy,* 546 F.Supp. 1221, 1229 (C.D.Cal. 1982) (fees may be awarded if action "is fundamentally analogous to an action in which some other party, either public or private, would be liable under existing fee-shifting statutes"). A habeas corpus petition under 28 U.S.C. § 2254 challenging state custody would be analogous to Boudin's action. Attorney's fees thus could be awarded to Boudin if they could be awarded in the "fundamentally analogous" state custody habeas action.

■ But there is no authority for taxing attorney's fees against states in the analogous state custody habeas action. A congressional statute is required in order to award attorney's fees in federal court actions when, as is the case here, no common law exceptions apply. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 257–62, 95 S.Ct. 1612, 1621–24, 44 L.Ed.2d 141 (1975). Congress has never passed a statute authorizing the award of attorney's fees in state custody habeas corpus cases litigated in the federal courts. *Rutledge v. Sunderland,* 671 F.2d 377, 382 (10th Cir.1982); *see Larsen v. Sielaff,* 702 F.2d 116, 118 (7th Cir.1983) (attorney's fees may not be awarded in habeas actions; 42 U.S.C. § 1988 (Supp. IV 1980), which autho-

rizes attorney fee awards in federal civil rights actions, is inapplicable to habeas proceedings), *cert. denied,* —— U.S. ——, 104 S.Ct. 372, 78 L.Ed.2d 330 (1983). Because there is also no common law provision authorizing fee awards in the analogous state habeas action, the EAJA does not authorize an award of fees against the United States in habeas actions litigating the propriety of federal custody.

### 3. *Encouragement of Resistance to Wrongful Government Activity: Public Policy*

The EAJA was passed partly to *encourage* challenges to improper actions by government agencies. The drafters perceived legal actions as helping to formulate public policy:

An adjudication or civil action provides a concrete, adversarial test of Government regulation and thereby insures the legitimacy and fairness of the law. An adjudication, for example, may show that the policy or factual foundation underlying an agency rule is erroneous or inaccurate, or it may provide a vehicle for developing or announcing more precise rules. The bill thus recognizes that the expense of correcting error on the part of the Government should not rest wholly on the party whose willingness to litigate or adjudicate has helped to define the limits of Federal authority.

*See* H.R.Rep. No. 1418, 96th Cong., 1st Sess. 10, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4984, 4988–89. By contrast, habeas petitions are dedicated to vindicating individual rights based on the Constitution rather than refining rules and policy. They are no more public policy oriented than is a criminal trial. Moreover, we doubt that Congress felt a need to encourage the filing of habeas petitions; they flourished long before the Act was proposed.

The above considerations convince us that Congress either meant to exclude habeas petitions from the scope of section 2412 or overlooked the question. But because a waiver of the sovereign immunity

of the United States must be unequivocal and explicit, *see, e.g., United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976), this Court need only consider whether Congress clearly manifested its affirmative intention to include habeas petitions within section 2412. Because we find that it did not, the mere inclusion in the statute of the words "any civil proceeding" should not be construed to authorize attorney's fees in habeas proceedings. Accordingly, the district court erred by characterizing a habeas proceeding as a civil action that falls under section 2412. *See Boudin v. Thomas,* 554 F.Supp. 703, 705 (S.D.N.Y.1982).

■ Thus, to the extent that Boudin's action was a petition for habeas corpus, the district court could not award her attorney's fees because the action did not fall within the provisions of the EAJA. However, Boudin also sought an injunction ordering prison authorities to allow her to have contact visits with her infant son. The district court granted the injunction on the ground that Boudin had a First Amendment right to contact visits. *Boudin v. Thomas,* 533 F.Supp. 786, 792–93 (S.D.N.Y. 1982). The part of her complaint seeking this relief is without question a civil action for purposes of the EAJA. *Cf. Preiser v. Rodriguez,* 411 U.S. at 499 n. 14, 93 S.Ct. at 1841 n. 14 (claim exclusively cognizable under federal habeas corpus may be litigated simultaneously with federal civil rights claims). For this civil portion of Boudin's action, we must determine whether one of the exceptions to section 2412(d)(1) applies here, namely, whether the government can show that its position was "substantially justified."

## C. Whether the Government's Position was "Substantially Justified"

■ Attorney's fees will not be awarded under the EAJA if a court "finds that the *position of the United States* was substantially justified." 28 U.S.C. § 2412(d)(1)(A) (emphasis added). We hold that "the position of the United States" refers only to the government's position when it litigates over an agency action.

The EAJA does not itself make clear whether "the position of the United States" refers to the position of the government in the litigation over the agency action, or the position of the agency itself (the underlying agency action). *See Spencer v. NLRB,* 712 F.2d 539, 546 & nn. 27–28 (D.C.Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984). The district court in the instant action adopted the view that both positions must be substantially justified, *Boudin v. Thomas,* 554 F.Supp. at 705 n. 7, a conclusion it based on two cases subsequently overruled by *Spencer v. NLRB,* 712 F.2d 539 (D.C.Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984).

Until now this Court had not ruled on the precise question. *Environmental Defense Fund, Inc. v. Watt,* 722 F.2d 1081, 1084 (2d Cir.1983). *But cf. id.* at 1088 (Newman, *J.,* dissenting). *See also Dubose v. Pierce,* 579 F.Supp. 937, 949 & n. 15 (D.Conn.1984) (following *Spencer* ). Three other circuits had earlier adopted the same standard as *Spencer. See United States v. 2,116 Boxes of Boned Beef,* 726 F.2d 1481, 1487 (10th Cir.1984); *Tyler Business Service, Inc. v. NLRB,* 695 F.2d 73, 75–76 (4th Cir.1982); *Broad Avenue Laundry and Tailoring v. United States,* 693 F.2d 1387, 1390–91 (Fed.Cir.1982). Two circuits reached the opposite conclusion; in one of these decisions, the two majority members of the panel disagreed in their reasoning and the dissenting panel member adopted the *Spencer* standard. *See Rawlings v. Heckler,* 725 F.2d 1192, 1195–96 (9th Cir.1984); *Natural Resources Defense Council, Inc. v. United States Environmental Protection Agency,* 703 F.2d 700 (3d Cir.1983) (two-to-one decision).

We find the reasoning in *Spencer* persuasive, especially as applied to the present situation:

> If, when evaluating an EAJA petition brought by a plaintiff ... who prevailed in a case [seeking declaratory and injunctive relief in an Eighth Amendment chal-

lenge to prison conditions], the judge focused on the justification for the government's "underlying action," he or she would find it virtually impossible to deny the plaintiff[ ] attorneys' fees. The net result would be that the EAJA would ... become something approaching an automatic fee-shifting provision for a significant category of cases.... [T]his seems not to have been contemplated by the congressmen who enacted the statute. *Spencer v. NLRB*, 712 F.2d at 553 (footnote omitted). *See Bennett v. Schweiker*, 543 F.Supp. 897, 898–99 (D.D.C.1982) (denying attorney's fees under EAJA though government agency's original decision not supported by substantial evidence). *See also Spencer v. NLRB*, 712 F.2d at 553–54 n. 52; *Dubose v. Pierce*, 579 F.Supp. at 949. Accordingly, we look only to the government's position in the litigation over the denial of contact visits to determine whether its actions were "substantially justified." [6] The government must make a "strong showing" that its litigation position was substantially justified, which is "essentially [a showing] of reasonableness." *Environmental Defense Fund, Inc. v. Watt*, 722 F.2d at 1085 (quoting H.R.Rep. No. 1418 at 10, 1980 U.S.Code Cong. & Ad. News at 4989).

█ The denial of contact visits is troubling, but we are compelled to reach the conclusion that the government's litigating position over this issue was substantially justified. Boudin prevailed in this part of the litigation on the ground that she had a First Amendment right to contact visits which could only be curtailed if the "limited restriction is a rational response by prison officials to an obvious security problem." *Boudin v. Thomas*, 533 F.Supp. at 793

(quoting *Bell v. Wolfish*, 441 U.S. 520, 550, 99 S.Ct. 1861, 1880, 60 L.Ed.2d 447 (1979)).

The government's argument that there was no First Amendment violation here, though unpersuasive, was not unreasonable. It was not clear at the time of the government's memorandum that there was a First Amendment right to contact visits. The only post-*Wolfish* circuit court holdings on point cited by the parties held that pretrial detainees did *not* have a constitutional right to contact visits. *Jordan v. Wolke*, 615 F.2d 749, 753–54 (7th Cir.1980); *Inmates of the Allegheny County Jail v. Pierce*, 612 F.2d 754, 758–60 (3d Cir.1979); *see also Ramos v. Lamm*, 639 F.2d 559, 580 n. 26 (10th Cir.1980) (accord; not cited by parties), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981). While the most recent pronouncement of this Court was that there was a First Amendment right to contact visits, *Wolfish v. Levi*, 573 F.2d 118, 126 n. 16 (2d Cir.1978), *reversed on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the change in the Supreme Court's standard of review of prison officials' actions in *Bell v. Wolfish* at least arguably made *Wolfish v. Levi* and the case on which it relied of questionable authority.[7] *See* Respondents' Memorandum of Law in Opposition to Petitioners' Application for a Writ of Habeas Corpus at 23–24 ("Memorandum in Opposition"), *Boudin v. Thomas*, 533 F.Supp. 786 (S.D. N.Y.1982).

Even if there was a First Amendment right to contact visits, the government's argument that this right was not abridged was reasonable. Warden Thomas swore in his affidavit that the consent to strip

---

**6.** We need not examine the government's litigation position over Boudin's request to be transferred because of the unconstitutional conditions of her confinement, as we have already held that this was not a "civil action" for which she could recover attorney's fees under the EAJA.

**7.** As the government pointed out, Memorandum in Opposition at 24 n. *, *Marcera v. Chinlund*, 595 F.2d 1231 (2d Cir.1979), which held that

there was a constitutional right to contact visits, was vacated by the Supreme Court. 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979). On remand, the district court made a *de novo* ruling based entirely on state law grounds. *Marcera v. Chinlund*, 91 F.R.D. 579, 586 n. 17 (W.D. N.Y.1981), *reproduced at* Memorandum of Law in Support of Petition for Habeas Corpus, Exhibit A, *Boudin v. Thomas*, 533 F.Supp. 786 (S.D.N.Y.1982).

searches of Boudin and her son would not be adequate to prevent escape attempts because "inmates can and have defeated this procedure by secreting contraband in body cavities or by ingesting material and later, in his or her cell, regurgitating it.... [C]hildren often are exploited as vehicles for transmission of contraband, especially since they cannot be prosecuted if contraband is discovered." J.App. at 39. This affidavit was proof that might have been accepted by the district court. The government's argument that this was a legitimate alternative to the right it believed it had to cut off all social visits, *see* Memorandum in Opposition, at 26 n. * (citing *Bell v. Wolfish*, 441 U.S. at 560 n. 40, 99 S.Ct. at 1885 n. 40); *see also Jordan v. Wolke*, 615 F.2d at 754; *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d at 760 & n. 4, was not unreasonable.

Finally, we are not precluded from making a *de novo* determination of whether the government's litigation position was substantially justified. We have held that the government reasonably argued that Boudin had no First Amendment right to contact visits. Because we are determining the reasonableness of legal arguments, we may review the district court's finding that the government's position was not substantially justified as we would any other question of law. *See Spencer v. NLRB*, 712 F.2d at 563 (whether government's interpretations of the law are "plausible or colorable" are findings of law).

Accordingly, the judgment of the district court in Docket No. 83–2170 is vacated and the cause is remanded with instructions to dismiss the petition for attorney's fees. The judgment of the district court in Docket No. 83–2174 is affirmed as to the petition under 42 U.S.C. § 1988 (Supp. IV 1980). Because of the disposition of Docket No. 83–2170, the cross-appeal in Docket No. 83–2174 is dismissed in all other respects as moot.