**Kent Patrick EWING, Petitioner,**

v.

**George RODGERS, Warden, Federal Correctional Institution, Englewood, Colorado; Norman Carlson, Director, U.S. Bureau of Prisons; Victor M.S. Reyes, Commissioner, United States Parole Commission; William French Smith, Attorney General of the United States, Respondents.**

**Civ. A. No. 83–M–2311.**

United States District Court, D. Colorado.

April 12, 1984.

Daniel J. Sears, Englewood, Colo., for petitioner.

Douglas Curless, Asst. U.S. Atty., Denver, Colo., for respondents.

## MEMORANDUM OPINION
## AND ORDER

MATSCH, District Judge.

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 by an inmate of the Federal Correctional Institution, Englewood, Colorado, claiming that he is being unlawfully detained because the United States Parole Commission has arbitrarily denied him conditional release. On February 22, 1982, Kent Patrick Ewing was committed to the custody of the Attorney General for treatment and supervision under the Federal Youth Corrections Act ("YCA"). The order of commitment was entered under 18 U.S.C. § 5010(b), which provides that the time of commitment is, "until discharged by the [Parole] Commission as provided in § 5017(c)," which, in turn, requires a conditional release under supervision on or before the expiration of four years from the date of conviction, and an unconditional discharge on or before six years from that date. After the conviction was affirmed on appeal and a petition for writ of certiorari to the United States Supreme Court was denied, the petitioner surrendered to begin service of his commitment on January 24, 1983. Mr. Ewing was placed at FCI, Englewood, where he was evaluated and a written classification study report was prepared under date of February 22, 1983.

In May, 1983, the petitioner met with hearing examiners from the Parole Commission and, by Notice of Action, dated June 9, 1983, Mr. Ewing was notified that his offense behavior was rated as "Category 6," and his salient factor score was 8. Accordingly, the petitioner was told that under youth case guidelines a range of 30-40 months was appropriate for his case; that a decision outside the guidelines was not found warranted and that he would be scheduled for a "Statutory Interim Hearing" during November, 1984. The notice then included the following language:

> However, to comply with the provisions of Watts vs Hadden you will be paroled on the alternate release date noted above (or at any time thereafter) once you have satisfactorily completed your program plan.

The presumptive parole date was shown as May 20, 1986, and the alternate release date given was July 20, 1985.

On November 21, 1983, Warden Rodgers, of FCI, Englewood, wrote the following letter to the Western Region Commissioner:

> Based on Mr. Ewing's successful participation in his Program Plan, I am certifying he has completed that portion of his Program Plan and Treatment Goals that can be completed at this institution. Completion of his total program includes a transitional period through a community treatment center. Therefore, we are recommending that he be released on an alternate parole date of May 1, 1984.

The Warden also enclosed copies of Mr. Ewing's program plan and progress report which included the statement that the staff believed Mr. Ewing can derive no further benefit from placement in a YCA facility.

To that letter, a case analyst from the Western Region of the Parole Commission wrote an acknowledgment, which included the following paragraph:

> Although this case has been reviewed for consideration under the Superior Program Achievement provisions, it is determined that there will be no change in the previous alternate release date and thus Mr. Ewing should be placed on the interim hearing docket in November 1984 unless he waives. At the time of the interim hearing, the Commission will again consider the issue of Superior Program Achievement. Pursuant to 28 CFR 2.60, and based on the 30 months alternate date set, Mr. Ewing could be considered for a Superior Program Achievement Award of up to two (2) months. Whether or not such an award is made will be determined at that time.

The inmate followed the administrative appeals process, without success, and then filed this petition for a writ of habeas corpus.

The answer and return to this court's order to show cause simply stated that the Parole Commission was adhering to its decision under the guidelines and that the focus of the decision was based upon the risk which the petitioner poses to the public and the benefit he may obtain from further supervision. At an oral argument on the petition, this court commented on the apparent conflict between the Parole Commission and the Bureau of Prisons in this particular case with all of the respondents appearing by an Assistant United States Attorney for this district. The court suggested that the Assistant United States Attorney contact the general counsel for the Parole Commission to be certain of that agency's position, and the court granted 20 days for the submission of an additional response from the Commission.

On February 16, 1984, the respondents requested an extension of time upon the representation that the Parole Commission was in the process of reconsidering Mr. Ewing's case. The extension was granted and a more complete answer was filed on February 21, 1984. Included in that answer is a report to the court on the Parole Commission's reconsideration, wherein the Commission advises that it has reaffirmed its earlier parole decision that Mr. Ewing would be paroled on July 20, 1985, if he completed his program and on May 20, 1986, if he did not. The Commission further advised that since it has been informed by Warden Rodgers that the petitioner completed his program plan in November, 1983, Mr. Ewing "will be paroled on July 20, 1985 if he maintains a satisfactory conduct record."

The Parole Commission contends that its position in this case is consistent with the applicable portion of the remedial plan accepted by this court in *Watts v. Hadden*, 469 F.Supp. 223 (1979), in which this court is exercising continuing jurisdiction for assuring implementation of the YCA provisions at FCI, Englewood. The reference is to the Joint Response of the Parole Commission and Bureau of Prisons on Release Policies and Procedures, submitted May 17, 1982. There, the Commission described the general procedure of establishing an alternate release date based on the assumption that the offender will satisfactorily complete his program plan and meet the treatment goals developed by the unit team. The Commission also stated that in the case of exceptional performance, the Commission may decide to advance the release date "at a subsequent hearing."

At pages 5 and 6 of the joint response, there is the statement that:

Upon notification that the youth offender has completed (or is about to complete) his program plan, the Commission will review the youth offender's case on the record, or schedule him for an early interim hearing. The Commission will consider the youth offender's program participation and conduct record, (and how this information affects his parole prognosis), his release plans, and other pertinent factors.

In this case, the Commission has made a record review and has reached the conclusion that the petitioner must remain in confinement for supervision at the FCI even though the Warden has said, unequivocally, that Mr. Ewing can derive no further benefit from the YCA facility. The justification given for the Commission's position is that the release of the petitioner now at the completion of his program would conflict with the parole criteria of 18 U.S.C. § 4206 as incorporated in 18 U.S.C. § 5017(a) for YCA inmates. The Commission has taken too restrictive an interpretation of the statutes and it has misinterpreted the plain language of the Tenth Circuit Court of Appeals in *Watts v. Hadden*, 651 F.2d 1354 (10th Cir.1981).

In that opinion, the appellate court made a careful and exhaustive analysis of the interplay of the 1976 Parole Commission Act and the Youth Corrections Act, including the amendment to § 5017(a), providing that the Commission may at any time release conditionally under supervision a committed youth offender in accordance with the provisions of § 4206. The error in the Commission's view given in this case is that it reads the cross-reference only to § 4206(a) and fails to consider the provi-

sions of § 4206(c). In *Watts v. Hadden, supra,* the Tenth Circuit said:

> We agree with the Parole Commission that in authorizing it to consider the offense severity of committed YCA offenders in determining eligibility for parole, Congress changed the procedure in that respect. But had Congress intended to overhaul the system, surely it would have said so. So, we have to conclude that the Commission's failure to consider the YCA offender's response to treatment, as required by that Act, to determine if there is "good cause" to release that Youth Corrections offender pursuant to § 4206(c) is wholly unwarranted, as is the Commission's failure to consider Youth Corrections Act offenders for unconditional release following one year parole pursuant to § 5017(b). Additionally, in 1976 § 5005 of the Youth Corrections Act was amended to read as follows:
>
> > § 5005. *Youth Correction decisions.* The Commission and, where appropriate, its authorized representatives as provided in section 4203(c), may grant or deny any application or recommendation for conditional release, or modify or revoke any order of conditional release, of any person sentenced pursuant to this chapter, and perform such other duties and responsibilities as may be required by law. **Except as otherwise provided,** decisions of the Commission shall be made in accordance with the procedures set out in chapter 311 of this title.
>
> This section specifically provides that the procedures of Chapter 311 are to be followed **except as otherwise provided** by the YCA. The Youth Corrections Act has indeed otherwise provided that Youth Corrections offenders' response to treatment is to be a determinative factor when considering those inmates' eligibility for parole.

*Watts,* 651 F.2d at 1380 (citations omitted; emphasis supplied by court).

The court also said:

> Accordingly, therefore, we must reach a conclusion opposite to that taken by the Commission. The rigid approach of the Commission in following their own guide-

lines to the exclusion of factors relevant to the rehabilitative purposes of the YCA cannot be approved. The Commission's application of its guidelines is inconsistent with positive law.

*Watts,* 651 F.2d at 1384.

In this case, the Commission's rigid adherence to the guidelines and refusal to consider the Warden's report, which constitutes a report under 18 U.S.C. § 5016, is an abuse of discretion and a failure to follow the positive requirements of the Youth Corrections Act. Accordingly, it is

ORDERED, that the petition for a writ of habeas corpus is granted and the petitioner shall be released conditionally under § 5017(c) on May 1, 1984.