Daniel G. BENEDICT,
Petitioner-Appellee

v.

George RODGERS, Warden, Federal Correctional Institute, Englewood, Colorado; Norman Carlson, Director, U.S. Bureau of Prisons; Helen G. Corrothers, Western Regional Commissioner, U.S. Parole Commission; William French Smith, Attorney General of the United States, Respondents-Appellants.

Kent Patrick EWING,
Petitioner-Appellee,

v.

George RODGERS, Warden, Federal Correctional Institute, Englewood, Colorado, et al., Respondents-Appellants.

Nos. 84–1562, 84–1580.

United States Court of Appeals,
Tenth Circuit.

Nov. 13, 1984.

As Amended on Denial of Rehearings
Jan 14, 1985.

Rockne Chickinell, Washington, D.C. (Robert N. Miller, U.S. Atty., and Douglas W. Curless, Asst. U.S. Atty., Denver, Colo., with him on brief), for respondents-appellants.

Daniel J. Sears, Englewood, Colo., for plaintiffs-appellees.

Before SETH, BREITENSTEIN and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

This joint appeal arises from two orders of the district court granting the habeas petitions of Daniel G. Benedict and Kent Patrick Ewing, both sentenced under the Federal Youth Corrections Act (YCA), 18 U.S.C. § 5005 *et seq.* (1982), and incarcerated at the Federal Correctional Institute in Englewood, Colorado. Each petitioner challenged as arbitrary and capricious determinations by the Parole Commission not to alter their respective release dates. Af-

ter giving the Parole Commission an opportunity to clarify both determinations, the district court found that the Commission abused its discretion by failing to consider adequately both the response of petitioners to treatment and the release recommendations of the Director of the U.S. Bureau of Prisons. Accordingly, the district court granted the habeas petitions. 582 F.Supp. 1513 (D.Colo.1984). The Parole Commission now appeals, asserting that the parole determinations complied with the YCA as interpreted by this Court in *Watts v. Hadden*, 651 F.2d 1354 (10th Cir.1981). We disagree and affirm the decision of the district court.

I.

In May 1983, petitioner Daniel G. Benedict was convicted of bank larceny and sentenced to an indeterminate to six year sentence under section 5010(b) of the YCA.[1] At Englewood, a classification study was made to determine an appropriate program. Benedict began a program of group correctional counseling and training in data processing. In September 1983, he appeared before the Parole Commission for his initial release hearing. His offense was rated as Category 5 severity while his salient factor score was graded as 9,[2] placing him within a release range of 20–26 months. *See* 28 C.F.R. §§ 2.13–2.20 (1983). His presumptive release date was set at March 30, 1985, and an alternate date, contingent upon satisfactory program completion, was set at November 30, 1984.

In November 1983, pursuant to section 5017(a), Warden Rodgers reported to the Parole Commission that Benedict had successfully completed his program plan and recommended that he be released on parole in 60 days. The Parole Commission responded in a short letter signed by a "Pre Release Analyst" as follows:

"Although this case was reviewed for consideration under the Superior Program Achievement provisions, it is determined that there will be no change in the previous alternate release date. Since the Commission reviews cases six months prior to the presumptive release date, this case will be reviewed on the record upon receipt of an updated progress report during May 1984. At that time, the Commission will again consider the issue of Superior Program Achievement. Therefore, please instruct your staff to send an updated progress report for a presumptive review six months in advance of the alternate date, so that an effective alternate release date can be set."

Benedict rec., vol. I, at 11.

Benedict filed a petition for a writ of habeas corpus. In response to an order to show cause, the Parole Commission attempted to justify its decision by contending that its position was consistent with its obligation to consider the risk that the inmate poses to the public and the benefit he may obtain from further supervision. The district court found that "[t]he Commission [had] taken too restrictive an interpretation of the statutes and it [had] misinterpreted the plain language of the Tenth Circuit Court of Appeals in *Watts v. Hadden*, 651 F.2d 1354 (10th Cir.1981)." Benedict rec., vol. I, at 75. Accordingly, the court ordered Benedict released effective May 1, 1984.

Kent Patrick Ewing was convicted of conspiracy to possess with intent to distribute cocaine in January 1982 and received a six year indeterminate sentence under the YCA. Following an unsuccessful appeal, he entered the Federal Correctional Institute at Englewood in January 1983. Like Benedict, his classification study stated that his correctional needs would best be met at Englewood and outlined a program

---

1. Section 5010(b) requires that the sentencing judge make a specific finding that the youth offender would benefit from treatment and supervision in a YCA facility.

2. The salient factor score indicates the individual's parole risk; the higher the score, the better the risk of good results on parole. Benedict received the highest salient factor score because he had no prior convictions, no drug or alcohol problems, and strong family support.

of counseling, on-the-job food-service training, and business education. In May 1983, he appeared before the Parole Commission for his initial hearing. His offense severity was rated as Category 6 and his salient factor score was graded as 8, placing him within a range of 30–40 months to be served before release. His presumptive parole date was set at May 20, 1986, with an alternate date of July 20, 1985, again contingent upon satisfactory program completion.

In November 1983, a prison evaluation team found that Ewing could derive no further benefit from incarceration in a ·YCA facility. As required by section 5017(a), Warden .Rodgers reported to the Parole Commission that Ewing had finished the portion of his program plan that could be accomplished at Englewood. Completion of the plan would require a transitional period through a community treatment center. The Warden recommended an alternate release date of May 1, 1984.

The Parole Commission acknowledged the Warden's letter with a letter from a Pre Release Analyst that is virtually identical to the Benedict letter referred to above. It stated that Ewing did not merit a reduction under the Superior Program Achievement provisions, that his alternate date would not be changed, and that the Commission would not further review Ewing's case until his interim hearing in November 1984. Consequently, Ewing filed a habeas petition. Following an order of the district court to justify its position, the Parole Commission reaffirmed the previous decision, focusing primarily on the severity of the offense while acknowledging that "Englewood has very little to offer [Ewing] with respect to rehabilitative programming" because of his prior level of academic achievement and his socio-economic background. Ewing rec., vol. I, at 99. The district court issued the writ, finding that "the Commission's rigid adherence to the guidelines and refusal to consider the Warden's report, ... is an abuse of discretion and a failure to follow the positive requirements of the Youth Corrections Act." *Id.* at 118.

## II.

In *Watts v. Hadden*, 651 F.2d 1354 (10th Cir.1981), this court thoroughly examined parole guidelines for youth offenders sentenced under the YCA. The petitioners in *Watts* similarly had been granted habeas relief because the Parole Commission had refused to follow the requirements of the YCA. On appeal, among other contentions, the Parole Commission challenged whether the YCA required consideration of an offender's response to treatment in his parole determination in light of section 4206 of the Parole Commission and Reorganization Act of 1976 (Reorganization Act), 18 U.S.C. §§ 4201 *et seq.* (1982). Subsection 4206(a) directs the Parole Commission to determine whether release would depreciate the seriousness of the offense or jeopardize the public welfare. Subsection 4206(c) permits the Commission to exercise discretion "notwithstanding the guidelines referred to in subsection (a) ... if it determines there is good cause for so doing ...." These guidelines are applied uniformly to youth as well as to adult offenders. In *Watts*, the Parole Commission interpreted them to exclude any consideration of rehabilitation as a factor, and argued that section 4206 in fact supplanted the requirements of the YCA.

In our examination of the effect of the Reorganization Act on the requirements of the YCA, we first observed in *Watts* that the goal of the YCA was "to substitute rehabilitative principles for retributive methods of treating antisocial behavior." 651 F.2d at 1368 (citing H.R.Rep. No. 2979, 81st Cong., 2d Sess., *reprinted in* 1950 U.S.Code Cong.Serv., at 3985). The Supreme Court had expounded this principle earlier in *Dorszynski v. United States*, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974), reasoning that under the YCA "the execution of sentence was to fit the person, not the crime for which he was convicted." *Id.* at 434, 94 S.Ct. at 3048, *quoted in Watts*, 651 F.2d at 1374. We refused to

disregard this evident purpose with respect to parole guidelines for youth offenders, especially in view of Congress' failure to repeal relevant provisions of the YCA. We noted, moreover, that Congress had simultaneously amended section 5005 of the YCA to read: *"Except as otherwise provided,* decisions of the Commission shall be made in accordance with the procedures set out in [the Reorganization Act]." 18 U.S.C. § 5005, *quoted in Watts,* 651 F.2d at 1380 (emphasis added in *Watts* ). We concluded that "[t]he Youth Corrections Act has indeed otherwise provided that Youth Corrections offenders' response to treatment is to be a determinative factor when considering those inmates' eligibility for parole." [3] *Id.*

To comply with *Watts,* the Parole Commission simply added an extra step to its previous youth offender guidelines. After weighing the severity of the offense and the salient factor (risk) score of the offender to figure a range of sentence, the Parole Commission now sets a presumptive parole date *and* an earlier alternate date, the latter to be applied only if an offender satisfactorily completes his or her program plan. We can detect no other way in which the Parole Commission treats youth offenders differently from adult offenders with respect to rehabilitation.[4]

The Parole Commission asserts that the alternate date combined with a possible reduction under the Superior Program Achievement provisions adequately incorporates rehabilitation and response to treatment as a factor in parole. The Commission stresses that the date is set with the expectation that an offender will satisfactorily complete his individualized program plan. It argues, moreover, that setting the alternate date at the initial hearing provides an incentive for the offender.

■ We believe that such prospective "consideration" of rehabilitation as a factor· in parole determinations does not satisfy the requirements of the YCA as analyzed in *Watts.* A proposed formulaic reduction of sentence for completion of a program plan does not approximate an evaluation of an *individual* offender's *response to treatment* as mandated by *Watts.* Nor does it amount to consideration of rehabilitation as a *determinative factor* in parole decisions as *Watts* explicitly requires.[5]

We are concerned that without more inherent flexibility, such a rigid, prospectively-applied formula converts an indeterminate sentence into a determinate one, thereby divesting the trial court of its sentencing function, a result expressly proscribed by the Supreme Court in *Dorszynski,* 418 U.S. at 440, 94 S.Ct. at 3051. *See Watts,* 651 F.2d at 1376. In addition, the knowledge that the Parole Commission will re-evaluate the extent of rehabilitation and response to treatment *following* completion of the program plan will provide a much

---

**3.** The Parole Commission refers us to *Adams v. Keller,* 736 F.2d 320 (6th Cir.1984) (en banc), where the Sixth Circuit held that as a result of the Reorganization Act, the YCA no longer mandates consideration of rehabilitation or response to treatment in youth offender parole decisions. *Adams* is contrary to *Watts,* which is applicable in this circuit.

**4.** At a subsequent interim hearing, youth offenders may be considered for a sentence reduction under the Superior Program Achievement provisions, depending on the original alternate parole date. *See* 28 C.F.R. § 2.60 (1983); Ewing rec., vol. I, at 48. Although the Parole Commission argues that this potential reduction incorporates a youth offender's response to treatment, these provisions apply equally to adult offenders. As noted above, neither Benedict nor Ewing were granted bonuses under these

provisions. Under the Commission practice, they were eligible at most for a two month reduction. *Id.; see* Benedict rec., vol. I, at 37; 28 C.F.R. § 2.60.

**5.** We do not imply that the Parole Commission should cease setting alternate dates based on program completion. We agree that the Commission should seek to "[alleviate] the anxiety of continued uncertainty about when release will occur," and that " 'the training regime should be far brisker and more demanding with a foreseeable date of release for those who respond well.' " Joint Response of the Parole Commission and Bureau of Prisons on Release Policies and Procedures, at 8 n. 8 (May 17, 1982) (quoting R. Hood, *Borstal Re-Assessed* 156 (1965)) (Ewing rec., vol. I, at 66). Nevertheless, we believe that, standing alone, an alternate date set in advance does not comply with *Watts.*

stronger incentive for the offender to do well.

The YCA contemplates a continuing evaluation of the offender's rehabilitation and response to treatment. Subsection 5017(a) authorizes the Commission to "release conditionally under supervision a committed youth offender in accordance with the provisions of section 4206 of this title." As the district court aptly pointed out in both orders, "[t]he error in the Commission's view ... is that it reads the cross-reference only to § 4206(a) and fails to consider the provisions of § 4206(c)." Benedict rec., vol. I, at 75; Ewing rec., vol. I, at 117. Subsection 4206(c) permits release *"notwithstanding the guidelines referred to in subsection (a) ... if it determines there is good cause for so doing."* (Emphasis added.) Rehabilitation and response to treatment obviously may constitute good cause for release. *See Watts,* 651 F.2d at 1380.

 Nevertheless, rehabilitation must not be presumed upon completion of the program; it must be evaluated based on an individual's response to treatment. As we recognized in *Watts,* the YCA requires

"[e]xtensive and repeated study of each youth offender on an individual basis .... The indeterminate sentencing provisions of § 5017 find justification in the Act's allowance for release based in large measure on a youth offender's progress and response to treatment.... If release decisions are made without reference to the progress of the youth offender in the rehabilitation program, the indeterminate sentencing provisions become little more than arbitrary imposition of additional punishment on youth offenders.... Such use of guidelines ... does away with individualized review and response to treatment in the face of Congressional intent that such should be the cornerstone of the sentencing and parole system."

*Id.* at 1381. An individualized assessment of these factors must be made at a mean-

ingful time. That time is signalled by the second requirement of section 5017(a): "When, in the judgment of the Director, a committed youth offender should be released conditionally under supervision he shall so report and recommend to the Commission." In each of these cases, the Director performed this duty. The cursory review by the Parole Commission made this recommendation practically superfluous. Without an evaluation more closely tailored to the individual's response to treatment, the Parole Commission essentially equates program completion with rehabilitation, rendering the remainder of a sentence entirely "retributive" in nature, in direct opposition to the stated purpose of the YCA. *See Watts,* 651 F.2d at 1368.

■ To comply with the YCA, therefore, we conclude that the Parole Commission must conduct a release hearing to evaluate the youth offender's response to treatment within a reasonable time following the Warden's certification of program completion.[6] This does not mean, as the Parole Commission fears, that the Commission must adopt the recommendation of the Warden and automatically release each offender upon completion of his program plan. Pursuant to its duty under section 4206, the Commission must still consider whether release will depreciate the seriousness of the offense or jeopardize the public welfare. Nevertheless, the individual offender's response to treatment and degree of rehabilitation must be the determinative factor in a final decision. The evaluation must be made in sufficient detail to permit a determination that the Commission has complied fully with the requirements of the YCA.

The orders of the district court are affirmed.

---

**6.** *See Christians v. Rodgers,* 592 F.Supp. 71 (D.Colo.1984). That court concluded that the Parole Commission should hold a release hearing within a reasonable time, which the court found to be no more than 90 days after the Warden's certification. *Id.,* at 73.