Kent Patrick EWING, Petitioner,

v.

George RODGERS, Warden, Federal Correctional Institution, Englewood, Colorado; Norman Carlson, Director, U.S. Bureau of Prisons; Victor M.S. Reyes, Commissioner, United States Parole Commission; William French Smith, Attorney General of the United States, Respondents.

Civ. A. No. 83–M–2311.

United States District Court,
D. Colorado.

Feb. 5, 1986.

Daniel J. Sears, Denver, Colo., for petitioner.

Douglas Curless, Asst. U.S. Atty., Denver, Colo., Rockne Chickinell, U.S. Parole Com'n, Chevy Chase, Md., for respondents.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

This petition for a writ of habeas corpus was filed on December 2, 1983. Judgment granting the writ was entered on April 12, 1984, 582 F.Supp. 1513, and affirmed on appeal on November 13, 1984, 748 F.2d 543. The matter is now before the court on petitioner's motion to alter the judgment to include attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA).

■ The portion of the EAJA in effect during this litigation allowing for an award of attorney fees provided:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any cost awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The petitioner contends that a petition for habeas corpus is a civil action, and that the position of the United States was not substantially justified. The government disputes both contentions.

One circuit has squarely held that a habeas proceeding is not a "civil action" within the meaning of section 2412. *Boudin v. Thomas,* 732 F.2d 1107 (2d Cir.1984). The *Boudin* opinion reasoned that a waiver of sovereign immunity must be unequivocal and explicit, and that habeas proceedings are "unique" and are not "civil actions for all purposes." Finding that "civil action" was ambiguous, the Second Circuit proceeded to examine the legislative history and found no evidence that Congress intended to allow recovery of attorney's fees in habeas proceedings.

The ordinary meaning of the language expresses the legislative purpose. *See Immigration & Naturalization Service v. Phinpathya,* 464 U.S. 183, 104 S.Ct. 584, 78 L.Ed.2d 401 (1984). The conclusion of the Second Circuit is contrary to statements of the Supreme Court. In *Bowder v. Illinois Department of Corrections,* 434 U.S. 257, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978), the Court wrote:

> Respondent has maintained throughout that the Federal Rules of Civil Procedure are wholly inapplicable on habeas. We think this is a mistaken assumption.

> It is well settled that habeas corpus is a civil proceeding. *Fisher v. Baker,* 203 U.S. 174, 181 [27 S.Ct. 135, 136, 51 L.Ed. 142] (1906); *Ex parte Tom Tong,* 108 U.S. 556 [2 S.Ct. 871, 27 L.Ed. 826] (1883); see *Heflin v. United States,* 358 U.S. 415, 418 n. 7 [79 S.Ct. 451, 453 n. 7, 3 L.Ed.2d 407] (1959). Perhaps in recognition of the differences between general civil litigation and habeas corpus proceedings, see *Harris v. Nelson,* 394 U.S. 286, 293–294, and n. 4 [89 S.Ct. 1082, 1087–88, 22 L.Ed.2d 281] (1969), the Federal Rules of Civil Procedure apply in habeas proceedings only "to the extent that the practice in such proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice in civil actions." Fed.Rule Civ.Proc. 81(a)(2); see Fed.Rule Civ.Proc. 1.

*Id.* at 269, 98 S.Ct. at 563.

There is no ambiguity now, and there was none when the EAJA was enacted in 1980; a petition for a writ of habeas corpus commences a civil action. The *Boudin* decision's attempt to rely on cases prior to *Bowder* (including *Harris* ) for the proposition that habeas corpus is "unique" and not a "civil action" is unsuccessful. The Congress was presumably aware of the *Bowder* decision. There are differences between habeas corpus and other civil litigation, but habeas was and remains emphatically a "civil action." It is not strange that the Second Circuit could find no "affirmative intention to include habeas petitions within section 2412." *Boudin,* 732 F.2d at 1115. It would seem self-evident that such proceedings would be within the meaning of the general phrase "civil action."

In its discussion of the legislative history of the EAJA, the *Boudin* court also appears to take an overly restrictive view of the nature of habeas proceedings. "[H]abeas petitions are dedicated to vindicating individual rights based on the Constitution rather than refining rules and policy." *Id.* at 1114. This very case was brought to vindicate rights denied because of an erroneous interpretation of a statute

by a federal agency. As a result, the Parole Commission's "rules and polic[ies]" were "refined." Moreover, many non-habeas civil actions have been brought against federal agencies, including suits for injunctions and declaratory judgments, to vindicate individual rights protected by the Constitution. Who could argue that section 2412(d)(1)(A) was not intended to apply to those actions?

The suggestion that EAJA can apply only where plaintiffs seek money damages is equally footless. It is true that part of the purpose of the EAJA was to ensure that potential litigants would not be deterred from contesting government action simply because it would not be cost effective. There is no basis for the negative implication that no fees can be awarded when the government has denied fundamental freedoms. The statute makes no such distinction. Indeed, when an agency of government deprives a person of his liberty on a basis that is not "substantially justified," the government should attenuate the effects of that deprivation by paying reasonable fees for the lawyer who has been effective in representing his client. To suggest that Congress elevated property interests over liberty interests is astonishing.

The unambiguous language of the EAJA and unequivocal Supreme Court pronouncements compel the conclusion that habeas corpus is a civil proceeding within the meaning of 28 U.S.C. § 2412(d)(1)(A).

■ Because the petitioners prevailed in these actions, the government carries the burden of demonstrating that its position was substantially justified. *Spencer v. N.L.R.B.*, 712 F.2d 539, 557 (D.C.Cir. 1983). "Substantially justified" is a slightly more stringent test than "one of reasonableness." *Id.* at 558. The "position of the United States" refers to the position of the government agency in the litigation. *United States v. 2,116 Boxes of Boned Beef,* 726 F.2d 1481, 1487 (10th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984).

■ The government advances the following reasons in support of its contentions that its position was substantially justified. First, the government suggests that the Parole Commission adopted a remedial parole plan after *Watts v. Hadden,* 651 F.2d 1354 (10th Cir.1981) which it reasonably believed had been approved for implementation by this court. This contention is specious. In the Joint Response of the Parole Commission and Bureau of Prisons on Release Policies and Procedures, 78–M–495, et al., 5–6 the Commission stated:

> The unit team will supply the Parole Commission with a progress report as soon as it has determined that the youth offender has satisfactorily completed his program plan. In conjunction with this report, the Warden shall make a recommendation to the Commission on whether the youth offender should be released. ... Upon notification that the youth offender has completed (or is about to complete) his program plan, the Commission will review the youth offender's case on the record, or schedule him for early interim hearing. The Commission will consider the youth offender's program participation and conduct record, (and how this information affects his parole prognosis), his release plans, and other pertinent factors.

Despite this assurance, the Parole Commission in this case "made a record review and ... reached the conclusion that the petitioner must remain in confinement for supervision at the FCI even though the Warden has said, unequivocally, that Mr. Ewing can derive no further benefit from the YCA facility." *Ewing v. Rodgers,* 582 F.Supp. 1513, 1515 (D.Colo.), *aff'd,* 748 F.2d 543 (10th Cir.1984). Of course, the Parole Commission could "reasonably believe" the plan was approved for implementation on July 30, 1982, (it was) but it was this court's expectation that the Parole Commission would abide by its assurances. In any event, this argument is irrelevant because it is not the action of the Parole Commission that must be substantially justified, it is the government's position in this litigation.

Second, the government argues that in *Fairchild v. U.S. Parole Commission,* Civil Action No. 83–F–1231 (January 16, 1984) "almost 3 months prior to this Court's order granting the writ for petitioner, Chief Judge Finesilver found no violation of the YCA in the use of the special remedial plan for Mr. Fairchild." Thus, it is said that the "government's defense and appeal in this case can hardly be characterized as unreasonable, when there were conflicting opinions on the same YCA issues from two district judges in the same court." Answer to Motion to Alter Judgment at 5–6. This contention is nearly frivolous. The government's position in this action was fully and finally set out in its Answer and Return to Order to Show Cause, filed December 27, 1983, three weeks before Chief Judge Finesilver ruled. Counsel. for the government would have had to have been clairvoyant to have used *Fairchild* as authority for its position here. *Fairchild* dealt with different facts and, in any event, was immediately appealed and vacated by the Tenth Circuit on the authority of *Benedict v. Rodgers,* 748 F.2d 543 (10th Cir.1984).

This court has no difficulty concluding that the position of the United States was unreasonable and not substantially justified. The government was instructed in unequivocal terms by this court and the Tenth Circuit in *Watts v. Hadden,* 489 F.Supp. 987 (D.Colo.1980), *aff'd,* 651 F.2d 1354 (10th Cir.1981) that the YCA inmates' response to treatment is to be a determinative factor when considering conditional release. Providing the youth offender with a personal hearing upon the Parole Commission's receipt of a Warden's report was an explicit requirement of the remedial plan in *Watts.* The Parole Commission's use of a record review in this matter and refusal to adjust the petitioner's release date after the recommendation of the Warden that no further benefit could be derived from incarceration was unjustified.

The position of the government in this litigation was in part that the Parole Commission was justified in adhering to its original parole dates arrived at through the application of regulatory guidelines, because of the risk the petitioner posed to society. This position bore little relation to the reason given by the Parole Commission for its action, which was that the petitioner would be released when the guidelines said he would be released. In any event, the government failed entirely to contest or refute the petitioner's central contention— that the Parole Commission's rigid adherence to guidelines and refusal to consider factors required by the YCA, specifically the Warden's report, in determining petitioner's release date constituted an abuse of discretion.

One need only to read the language of the court of appeals in *Benedict v. Rodgers,* 748 F.2d 543 (10th Cir.1984) to understand that the affirmance was based on the clear language of the prior opinion in *Watts v. Hadden,* 651 F.2d 1354 (10th Cir. 1981).

Finally, the government contends that the petitioner's application for fees is untimely so far as the district court litigation is concerned because while it was filed within thirty days of the court of appeals' judgment, the motion was made more than thirty days after the judgment entered here. While the circuits are split on the issue, the majority and better-reasoned decisions have concluded that a fee application may be made "within thirty days after the judgment in the district court has become final and unappealable, or after the court of appeals or the Supreme Court has entered a final judgment." *McDonald v. Schweiker,* 726 F.2d 311, 315 (7th Cir.1983) (Posner, J.).

Accordingly, it is

ORDERED that the petitioner's motion to amend judgment is granted, and the judgment is amended to award attorney's fees in the amount of $7,308.04.