Jerry Wayne **WATTS, et al., Petitioners,**

v.

**John T. HADDEN, Warden, et al., Respondents.**

**Civ. A. No. 78–M–495.**

United States District Court, D. Colorado.

Feb. 5, 1986.

Daniel J. Sears, Vicki Mandell-King, Asst. Federal Public Defender, Denver, Colo., for petitioners.

Douglas Curless, Asst. U.S. Atty., Denver, Colo., Claire Cripe, General Counsel, U.S. Bureau of Prisons, Washington, D.C. Rockne Chickinell, U.S. Parole Com'n, Chevy Chase, Md., John Shaw, Western Regional Counsel, U.S. Bureau of Prisons, Burlingame, Cal., for respondents.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

This class action on behalf of persons who have been committed for treatment under the Youth Corrections Act ("YCA"), 18 U.S.C. §§ 5005 *et seq.*, is again before this court pursuant to its continuing jurisdiction to implement the mandate issued in *Watts v. Hadden*, 651 F.2d 1354 (10th Cir. 1981). The present dispute concerns the manner in which the Parole Commission determines the conditional release date of a YCA inmate, and the respective roles of the Parole Commission and the Bureau of Prisons. While the YCA was repealed on October 21, 1984 in 98 Stat. 2027, and while this court did, on November 4, 1985, authorize the Bureau of Prisons to implement an amended plan to use FCI, Englewood, a designated YCA facility, to house some non-YCA offenders, the repeal is of no effect on the present issues because persons committed under the Act must be treated according to the requirements of the statute.

The court of appeals made it clear in *Watts, supra,* that the Parole Commission was failing to follow the requirements of the YCA because the Commission had mistakenly believed that the enactment of the 1976 Parole Commission Act had impliedly repealed certain provisions of the YCA. More particularly, the court concluded that the inmates' response to treatment must be considered with the criteria contained in 18 U.S.C. § 4206(a).

The respondents received further instructions on the law from the Tenth Circuit Court of Appeals in *Benedict v. Rodgers,* 748 F.2d 543 (10th Cir.1984), which concerned two habeas corpus petitions out of this court. In that opinion, as modified by an order entered on January 14, 1985, the appellate court affirmed this court's finding and conclusion that by the use of a presumptive release date, with an alternate date, contingent upon satisfactory program

completion, the Parole Commission was failing to give adequate consideration to the individual's response to treatment. The circuit court used the following language:

> We believe that such prospective "consideration" of rehabilitation as a factor in parole determinations does not satisfy the requirements of the YCA as analyzed in *Watts*. A proposed formulaic reduction of sentence for completion of a program plan does not approximate an evaluation of an individual offender's response to treatment as mandated by *Watts*. Nor does it amount to consideration of rehabilitation as a determinative factor in parole decisions as *Watts* explicitly requires.
>
> We are concerned that without more inherent flexibility, such a rigid, prospectively-applied formula converts an indeterminate sentence into a determinate one, thereby divesting the trial court of its sentencing function, a result expressly proscribed by the Supreme Court in *Dorszynski*, 418 U.S. [424] at 440, 94 S.Ct. at [3042] 3051 [41 L.Ed.2d 855 (1974)]. See *Watts*, 651 F.2d at 1376. In addition, the knowledge that the Parole Commission will re-evaluate the extent of rehabilitation and response to treatment following completion of the program plan will provide a much stronger incentive for the offender to do well.

*Id.* at 546–47.

The habeas corpus petitions considered in *Benedict* were filed after the Parole Commission had refused to change the alternate release dates in consideration of the Warden's report of program completion and recommendation for an earlier release date. The evidentiary hearings which have since been held in this class action, and the briefs which have been filed, make it clear that the response to the *Benedict* decision by the Bureau of Prisons was an abdication of authority and a shifting of full responsibility to the Parole Commission to determine release dates. While the previous practice had been for the Warden (as the Director's delegate) to certify program completion and recommend a release date,

the new approach is simply to certify program completion and make no recommendation. The stated justification for this position is that the Bureau of Prisons is not in the rehabilitation business, and has no "expertise" to make any such determinations. That is a facile evasion of a difficult decision. The question is not "expertise" but responsibility.

The purposes and structure of the YCA have been examined and articulated repeatedly by the courts. In *Dorszynski v. United States*, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974), the Supreme Court considered the overall plan for the YCA in great detail, and emphasized that:

> An important element of the program was that once a person was committed for treatment under the Act, the execution of sentence was to fit the person, not the crime for which he was convicted.

*Id.* at 434, 94 S.Ct. at 3048.

■ There is a joint responsibility for both the Bureau of Prisons and the Parole Commission to act together to determine the appropriate treatment required for an individual inmate, and to determine the time when he has responded to that treatment sufficiently to warrant release after consideration of the other two criteria in section 4206(a). Under section 5014, the Bureau of Prisons must make an initial classification study within thirty days of commitment, and report the findings from that study with recommendations for treatment to the Parole Commission. A parole interview must be conducted as soon as practicable after commitment. It seems apparent that the Act contemplates participation by the Parole Commission in the treatment program design for each inmate. There would be no other purpose for the statutory requirements that it receive the classification report with recommendations and that it conduct an early parole interview.

Under section 5016, the Director must cause periodic examinations and re-examinations to be made on all YCA inmates with reports to the Parole Commission as

to each offender. Under section 5017(a), the Parole Commission may make the conditional release decision at any time; but, that subsection also contains the following language:

> When, in the judgment of the Director, a committed youth offender should be released conditionally under supervision he shall so report and recommend to the Commission.

Since the *Benedict* decision, the Bureau of Prisons has read that language to mean that it need report only on matters "within its knowledge and expertise: the offenders completion of the individualized treatment plan at the institution, along with any comments on particularly good or poor adjustment on his part." Bureau of Prisons' Response at page 2. That view contradicts the explicit language of the statute which requires the Director to report when a *"committed youth offender should be released conditionally under supervision."* The Director does not have the option of refusing to make a judgment as to when an offender should be released conditionally because the Bureau of Prisons has a philosophical disagreement with a policy of rehabilitative treatment, or because it is difficult to predict human behavior, or because the staff does not include persons with adequate knowledge or training. The plain language of the statute compels the Bureau of Prisons to make a recommendation for a release date. While the Director may choose the particular means and manner for making the judgment, he cannot avoid the responsibility for recommending a release date to the Parole Commission.

For its part, the Parole Commission continues to contend that regardless of program participation, the offense severity is a primary factor, and that emphasis on offense severity is necessary to reduce disparity which erodes confidence in the criminal justice system. The YCA expressly contemplates disparity in the length of confinement of inmates convicted of the same or similar offenses. That is precisely why the Act was adopted as an alternative to the sentence which would otherwise be required by law. Again, it is necessary to emphasize that which the Supreme Court said thirteen years ago in *Dorszynski. The execution of the sentence must fit the person, not the crime for which he was convicted.* What has been shown here, yet again, is the same resistance to recognize and respond to the requirements of the law that these respondents have demonstrated throughout the years in which this litigation has been in this court. It seems incredible that the respondents still sing the refrain that they cannot determine when "rehabilitation" has been achieved. In this regard, it should again be noted that nowhere in the YCA is the word "rehabilitation" used. The statute speaks to "treatment" which is defined in section 5006(f) as:

> (f) "treatment" means corrective and preventive guidance and training designed to protect the public by correcting the anti-social tendencies of youth offenders.

The Congress recognized that no one can foretell future conduct of any individual when it required that the initial release must be a "conditional release," subject to close supervision. Obviously, the best measure of the ability of a person to function in free society is to put him back there under close supervision and adequate control.

■ While this court has consistently sought to avoid intrusion into the discretionary authority of the respondents in performing their respective duties under the Act and has, accordingly, directed the submission of plans for compliance with the Act as it has been interpreted in this circuit, it now becomes clear that more specific direction is required to avoid prolonging this litigation beyond the time when the last YCA inmate will be in the system. Moreover, the giving of some specific direction seems necessary to avoid the continuing proliferation of habeas corpus petitions by inmates in this district. Those who are serving the YCA commitments should be given more adequate guidance with respect to the goals and objectives of

their individual institutionalization and the requirements which they must meet to obtain conditional release. Toward that end, the Bureau of Prisons and Parole Commission should agree upon the treatment program plan for each inmate. Since most of the inmates now in this class are well beyond the initial classification stage, some mechanism should be developed for the Parole Commission to review their program plans and indicate approval or disapproval at the earliest possible time.

A second requirement is that the Director through his delegate, the Warden, or some other staff position, shall develop a system for periodic reporting on the inmate's progress in treatment, with written reports and interim evaluations to go to the Parole Commission no less frequently than at six-month intervals. Additionally, the Director shall, through the Warden or other delegate, cause a section 5017(a) recommendation for conditional release to be made to the Parole Commission, with a report of findings and a sufficient statement of reasons to give the Parole Commission an understanding of the individual inmate's status and the basis for the Director's judgment.

To make these periodic reports and release recommendations meaningful, the Parole Commission will be required to conduct conditional release interviews with each inmate within ninety days of the receipt of the interim reports and within sixty days of receipt of the release recommendation. Those interviews must be attended by the inmate's unit leader, or some other person from the institution having direct knowledge of the inmate's participation in programs and conduct within the institution, who can respond to questions from the hearing examiners and the inmate.

It should be made clear to all inmates that they may not rely on any previous presumptive release date determinations or alternative release date determinations. Counsel for the plaintiff class has asserted that all of the class members should be given new opportunities for hearings without the threat of losing the existing alternate release dates. That would be inconsistent with and violate the provisions of section 5018, giving the Parole Commission the express authority to revoke or modify any of its orders respecting a committed youth offender, excepting an order of unconditional discharge. It also would be inconsistent with this court's criticism of the previous conduct of the Parole Commission in using guidelines to transform indeterminate sentencing to determinate sentences.

While the Parole Commission may continue to use the guidelines for purposes of evaluating the section 4206(a) criteria, it must not continue the policy of refusing to release any inmate earlier than would be dictated by the "very good" category plus the maximum reduction for superior program achievement provided at 28 C.F.R. § 2.60. There can be no strict requirement for any minimum time to be served under a YCA sentence.

These are the directions to be followed. The details for implementing them are matters which must be determined by the respondents. In directing further action, this court is, of course, aware that the YCA inmate population is declining. In that regard, there is the flexibility provided in section 5015(b) giving the Director the authority to transfer committed youth offenders from one agency or institution to another agency or institution, and the additional authority granted in section 5013 to contract with any appropriate public or private agency for the training of committed youth offenders. It may well be that with the declining population the use of contract facilities will become more appropriate for the particular treatment needs of individuals under the YCA, and that for appropriate and articulated reasons, an inmate may be placed with a contract agency even though there would then be no segregation from adults. These are matters which are not now before this court in this case. They are mentioned only to remind the respondents that there are alternatives which can be considered in performing the difficult task of treating YCA inmates un-

der the changed circumstances resulting from repeal of the Act.

Upon the foregoing, it is

ORDERED that on or before March 31, 1986, the respondents Bureau of Prisons and Parole Commission shall file a joint plan for the implementation of the directions given herein.