2 F.3d 1160
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Roy M. ALEXANDER, Petitioner-Appellant,
v.
J.H. CRABTREE, Warden; United States Parole Commission,
Respondents-Appellees.
 No. 93-1019.
 United States Court of Appeals, Tenth Circuit.
 Aug. 9, 1993.
 
 Before McKAY, Chief Judge, SETH and BARRETT, Circuit Judges.
 ORDER AND JUDGMENT[1]
 McKAY, Chief Judge.
 
 
 1
 The parties have agreed that this case may be submitted for decision on the briefs. See Fed.R.App.P. 34(f); 10th Cir.R. 34.1.2. The case is therefore ordered submitted without oral argument.
 
 
 2
 * In March 1981, Petitioner participated in four brutal murders during a robbery in an uninhabited area of Camp Elliott, near San Diego, California. At the time he was sixteen years of age. After trial, he was convicted in the United States District Court for the Central District of California of four counts of murder and four counts of felony murder. The trial court sentenced him to four consecutive life terms of imprisonment. Because of his youth, however, this sentence was imposed pursuant to former 18 U.S.C. Sec. 5010(c), the Youth Corrections Act. The trial court expressed its expectation that Appellant would not be paroled before he had served twenty or twenty-five years.
 
 
 3
 Petitioner's early years in custody were somewhat rocky. While Petitioner did earn an Associate in Arts degree, he received several incident reports, including one for making and using intoxicants. A psychological evaluation prepared in 1987 at FCI Englewood concluded that while Petitioner was able to control his behavior in the structured environment of the prison, he remained deeply disturbed. The report found that he was not responsive to psychological treatment and that he was a poor candidate for release. It also noted that Petitioner, consistent with his testimony at trial, minimized his own role in the murders and placed most of the blame on his co-defendant.
 
 
 4
 Since that time, however, Petitioner has, by all accounts, been a model inmate. He has completed his program plan, which called for 100 hours of group counseling and 500 hours of individual counseling. He has maintained clear conduct and an excellent work record. The Chief of Psychology at FCI Sheridan, the institution where he is presently incarcerated,[2] stated in September 1991 that, in his opinion, Petitioner "has met both the letter and the intent of the Youth Corrections Act," and that Petitioner "does not suffer from a major psychological disorder." (R., Vol. I, doc. 11, Ex. E.) That psychologist also noted that "[w]hile it might be wished, considering the offense behavior, that he be involved in therapy, there is no clear and pressing need for it." (Id.) Similarly, the Warden of FCI Sheridan has certified that Petitioner has completed his program plan. In July 1992, the Warden recommended that Petitioner be paroled.
 
 
 5
 The Parole Commission declined to follow the recommendations of the officials at FCI Sheridan. It noted that the 1987 psychological evaluation of Petitioner conflicted sharply with the 1991 evaluation. It also noted that, consistent with his trial testimony, Petitioner continues to downplay his responsibility for the murders and places most of the blame on his co-defendant. The Commission concluded by stating: "Balancing the extraordinarily violent and impulsive nature of your crime, with the present evidence of your response to treatment, the Commission believes a decision to parole you would pose an unwarranted risk to the public and also, without good cause, depreciate the heinous nature of your offense." (R., Vol. I, doc. 21, Ex. 19).
 
 
 6
 Petitioner brought this action for a writ of habeas corpus. The district court denied relief. Petitioner appeals.
 
 II
 
 7
 Under the YCA, the focus is on rehabilitation, rather than on retributive punishment. United States v. Dunn, 545 F.2d 1281, 1282-83 (10th Cir.1976). The offender is given a program plan designed to carry out the YCA's rehabilitative purpose. This court has interpreted the act as follows:
 
 
 8
 To comply with the YCA, ... the Parole Commission must conduct a release hearing to evaluate the youth offender's response to treatment within a reasonable time following the Warden's certification of program completion. This does not mean ... that the Commission must adopt the recommendation of the Warden and automatically release each offender upon completion of his program plan. Pursuant to its duty under [18 U.S.C.] section 4206, the Commission must still consider whether release will depreciate the seriousness of the offense or jeopardize the public welfare. Nevertheless, the individual offender's response to treatment and degree of rehabilitation must be the determinative factor in a final decision. The evaluation must be made in sufficient detail to permit a determination that the Commission has complied fully with the requirements of the YCA.
 
 
 9
 Benedict v. Rodgers, 748 F.2d 543, 547 (10th Cir.1984).
 
 
 10
 So long as the Parole Commission follows the procedures outlined in Benedict, our review is quite limited. The issue in this court is "whether the decision is arbitrary and capricious or is an abuse of discretion." Lewis v. Beeler, 949 F.2d 325, 331 (10th Cir.1991), cert. denied, 112 S.Ct. 1972 (1992). Further,
 
 
 11
 [a] court of review need only determine whether the information relied on by the Commission is sufficient to provide a factual basis for its reasons. The inquiry is not whether the Commission's decision is supported by a preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Commission's conclusions....
 
 
 12
 Id. at 332.
 
 
 13
 Under this extremely deferential standard of review, we see no basis to reverse the decision of the Parole Commission. At this time it is rational to conclude that the Chief of Psychology and the Warden at FCI Sheridan are simply mistaken in their evaluation of Petitioner. While Petitioner presents compelling evidence that he has made substantial progress, in view of the severity of his crime and the prior unfavorable clinical evaluation, the Parole Commission's decision cannot be called irrational.
 
 
 14
 This is not to say that the Parole Commission may warehouse Petitioner indefinitely, based solely on the heinous nature of Petitioner's crime and the 1987 evaluation. The entire spirit of the YCA is that, although a youth offender might have been a violent criminal at one time, treatment may lead to complete rehabilitation. Thus, in our view, the principles discussed in Benedict require the Parole Commission, in rejecting the Warden's parole recommendation, to have some contemporary evidence suggesting that Petitioner is not rehabilitated today.
 
 
 15
 Thus, we conclude that if the Commission wishes to disregard the views of the officials at FCI Sheridan, it must either articulate contemporary facts suggesting that those views are wrong, or seek the opinion of other mental health or corrections professionals regarding the suitability of release. Should the Commission discover no such facts, and should consultations with other professionals reaffirm the conclusions of the officials at FCI Sheridan, the continued refusal of the Commission to release Petitioner would lack a rational basis.
 
 
 16
 Accordingly, while we affirm the trial court's decision denying Petitioner's request for immediate release, we conclude that the Commission must come forward with some form of contemporary evidence supporting its decision within a specified time period. We set that time period at 180 days, unless the Commission can demonstrate before the district court that 180 days is insufficient to conduct an adequate evaluation of Petitioner. If, within that time period, the Commission does not come forward with contemporary evidence showing a rational basis for its continued belief that Petitioner's release would pose an unwarranted risk to the public, Petitioner would be entitled to release.
 
 
 17
 AFFIRMED IN PART, MODIFIED IN PART, AND REMANDED. The mandate shall issue forthwith.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [2]
 While this institution is outside this circuit (it is in Oregon), this case arose under the jurisdiction of the United States District Court for the District of Colorado. Petitioner was formerly incarcerated at FCI Englewood, Colorado, where he was a member of a class action which litigated the rights of prisoners sentenced under the YCA. See Watts v. Hadden, 651 F.2d 1354 (10th Cir.1981). An order issued in that litigation in 1988 specified that class members could be transferred to other districts, but specified that the District of Colorado retained jurisdiction over the class members