**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 1 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ROY MASON ALEXANDER,

       Petitioner-Appellant,

v.

UNITED STATES PAROLE
COMMISSION,

       Respondent-Appellee.

No. 99-1262
(D.C. No. 98-M-2111)
(D. Colo.)

---

**ORDER AND JUDGMENT**  *

---

Before **KELLY** , **HENRY** , and **MURPHY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is

therefore ordered submitted without oral argument.

---

\*      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

BACKGROUND

Petitioner Roy Mason Alexander appeals the district court's order denying his second application for writ of habeas corpus under 28 U.S.C. § 2241 seeking release from his confinement. [1] Alexander was sentenced in 1981 to four consecutive life terms on August 28, 1981, under the former Youth Corrections Act ("YCA"), 18 U.S.C. § 5010(c) (repealed 1984), for his participation in the execution-style killing of four people, including a two-year-old child. Alexander was sixteen at the time he committed the offenses.

Prior § 2241 Proceedings

Alexander's first § 2241 petition was dismissed by the district court in 1993. On appeal, we affirmed the district court's decision denying immediate release, but remanded the case, ordering the Parole Commission to come forward with contemporary evidence supporting its decision to deny Alexander parole. *See Alexander v. Crabtree*, No. 93-1019, 1993 WL 307649 (10th Cir. Aug. 9,

---

[1] Alexander is incarcerated at the federal correctional institution in Sheridan, Oregon. Alexander was previously incarcerated at the federal correctional institution in Englewood, Colorado, where he was a member of a class action which litigated the rights of prisoners sentenced under the Youth Corrections Act. *See Watts v. Hadden*, 651 F.2d 1354 (10th Cir. 1981). The Colorado district court's jurisdiction was based on a 1988 order issued in that litigation which specified that class members could be transferred to other districts, but that the District of Colorado would retain jurisdiction over them. *See Alexander v. Crabtree*, No. 94-1375, 1994 WL 722961, at **1 n.2 (10th Cir. Dec. 20, 1994) (unpublished disposition) (citing *Watts v. Belaski*, No. 78-M-495 (D. Colo. Dec. 6, 1988)).

1993) (unpublished disposition). The Commission then ordered an additional psychiatric evaluation of Alexander and held a special reconsideration hearing. In 1994, the Commission recommended no change to Alexander's continuation to a fifteen-year reconsideration hearing scheduled for March 2001. Alexander appealed that decision. We affirmed the Commission's decision denying parole, finding that the Commission had complied with the relevant regulations and that its decision was not irrational, arbitrary or unsupported by evidence. *See Alexander v. Crabtree*, No. 94-1375, 1994 WL 722961 (10th Cir. Dec. 20, 1994) (unpublished disposition).

## Current § 2241 Petition

Following the dismissal of Alexander's first § 2241 petition, the Parole Commission conducted interim reconsideration hearings in 1995, 1996 and 1997. The most recent decision denying Alexander parole noted that Alexander was eligible for a new interim hearing in September 1998, but Alexander waived his right to that hearing and, instead, filed the underlying § 2241 habeas petition on September 30, 1998.

After an *in camera* review of the Parole Commission's record, the district court denied the petition, stating:

> [T]he record shows that the Parole Commission has conducted numerous reviews and that multiple psychological evaluations have produced varying results. The Commission has complied with its regulations, published in 28 C.F.R. § 2.6[4], but has refused to

-3-

release [Alexander] because the Commission is concerned that a release now would depreciate the seriousness of his offenses and jeopardize public safety. The Commission has consistently noted Alexander's failure to acknowledge his culpability in the commission of these murders of four innocent people, including a two-year old child, and he has continued to place the blame fully on the co-defendant. No psychiatrist or psychologist has been able to offer an explanation of this behavior.

Because the Parole Commission followed the procedural steps required of it, the district court dismissed the habeas petition.

DISCUSSION

The Youth Corrections Act

"The core purpose of the Youth Corrections Act is rehabilitation." *Johnson v. Rodgers*, 756 F.2d 79, 80 (10th Cir. 1985) (per curiam) (citing *Dorszynski v. United States*, 418 U.S. 424 (1974)).

To accomplish this purpose, a youthful offender may receive an indeterminate sentence, during which he is to undergo a comprehensive program of rehabilitation, followed by a period of conditional release. The time of release is based upon a determination that the offender has acquired the stability and redirection to overcome the past and begin life anew.

*Id*. (citations omitted).

The Commission may advance a prisoner's presumptive parole date if it determines that he has sufficiently responded to his treatment program. *See* 28 C.F.R. § 2.64(e). The decision must be arrived at on a case-by-case basis, and the Commission must equally weigh the prisoner's response to treatment, the

-4-

seriousness of the offense, and the original parole prognosis, with no one factor capable of excluding the others. *See id* . In order to evaluate the extent of an offender's positive response to treatment, the Commission must examine "the degree by which the prisoner has increased the likelihood that his release would not jeopardize public welfare through his program performance and conduct record." 28 C.F.R. § 2.64(d)(2).

We have held that:

> To comply with the YCA, . . . the Parole Commission must conduct a release hearing to evaluate the youth offender's response to treatment within a reasonable time following the Warden's certification of program completion. This does not mean . . . that the Commission must adopt the recommendation of the Warden and automatically release each offender upon completion of his program plan. Pursuant to its duty under [18 U.S.C.] section 4206, the Commission must still consider whether release will depreciate the seriousness of the offense or jeopardize the public welfare. Nevertheless, the individual offender's response to treatment and degree of rehabilitation must be [a] determinative factor in a final decision. [2] The evaluation must be made in sufficient detail to permit a determination that the Commission has complied fully with the requirements of the YCA.

*Benedict v. Rodgers* , 748 F.2d 543, 547 (10th Cir. 1984) (footnote omitted).

Analysis

---

[2] On January 14, 1985, this court amended its opinion in *Benedict* to provide that rehabilitation must be "a" determinative factor rather than "the" determinative factor in the parole decision. *See Paz v. Warden, Fed. Correctional Inst* ., 787 F.2d 469, 472 n.* (10th Cir. 1986).

Alexander contends that the Parole Commission has focused solely on the severity of his offense, and has failed to give proper weight to the fact that he has completed all of his prescribed treatment programs. He contends that the Parole Commission's failure to release him based on his completion of the prescribed treatment programs demonstrates that the Parole Commission is impermissibly converting his YCA conviction into a "punitive" determinate sentence in violation of the YCA.

The Commission's decision may not be disturbed unless there is a clear showing of arbitrary or capricious action and an abuse of discretion. *See Misasi v. United States Parole Comm'n*, 835 F.2d 754, 758 (10th Cir. 1987). "The inquiry is not whether the Commission's decision is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Commission's conclusions embodied in its statement of reasons." *Id*. (quotation omitted).

"[R]ehabilitation must not be presumed upon completion of the [prescribed treatment] program; it must be evaluated based on an individual's response to treatment." *Benedict*, 748 F.2d at 547. Thus, the fact that Alexander has completed his prescribed treatment does not compel the Parole Commission to grant him early release. The Parole Commission carefully considered Alexander's program performance, including his participation in mental health counseling and

treatment, but found that he was not an acceptable risk for release to the community.

The Parole Commission did express concern that Alexander has continuously changed his account of his involvement in the four murders, stating that Alexander has "never given a truthful account of the murders." *See* R. Doc. 13, Ex. 20 at 1. This was a valid factor for the Commission to take into consideration. The applicable regulations provide that the nature of the offense may be considered in determining the risk to the public presented by the prisoner's release, and provide that, for those offenders who have exhibited serious or violent criminal behavior, the Commission is to be more cautious in finding that the offender has responded to treatment to the degree that he may be released. *See* 28 C.F.R. § 2.64(d)(2). The Commission may also properly consider whether Alexander "evidences an alteration of his values system, including an understanding of the wrongfulness of his past criminal conduct." *Id*.

We agree with the district court that the Commission complied with the applicable regulations, and we find no evidence in the record that the Commission acted arbitrarily or capriciously or abused its discretion in determining that Alexander should not be paroled at this time. [3] There is a rational basis in the

---

[3] The district court expressed concerns that bear repeating. After noting that Alexander is frustrated because there is nothing further he can do in the way of

(continued...)

record for the Commission's conclusion and we do not reweigh the evidence, redetermine the credibility of reports, or substitute our judgment for that of the Commission. *See Fiumara v. O'Brien*, 889 F.2d 254, 257 (10th Cir. 1989). Thus, we see no basis to reverse the decision of the Parole Commission.

The judgment of the United States District Court for the District of Colorado is AFFIRMED. Alexander's motion for leave to proceed *in forma pauperis* on appeal is granted.

Entered for the Court

Robert H. Henry
Circuit Judge

---

[3](...continued)
further participation in treatment programs to satisfy the Parole Commission, the district court remarked that:

> This court is also frustrated because these sentences simply do not square with the purposes of the YCA. They are an aberration and there is an understandable caution involved in determining that the release of a cold-blooded teenage killer would not jeopardize public safety. Because the Parole Commission has followed the procedural steps required of it, there is no authority for the court to contradict the conclusion of the Commission. It is to be expected that the opportunity for interim hearings will be given to [Alexander] before the reconsideration hearing and that any new developments will be considered by the Parole Commission.

Dist. Ct. Order at 3.